No. 23-55004

# IN THE UNITED STATES COURT OF APPEAL
# FOR THE NINTH CIRCUIT

KIMBERLY LONG,
*Plaintiff-Appellee,*

vs.

THOMAS WEEKS, RONALD ANDERSON, DANIEL
BLOOMFIELD, ROBERT NEWMAN, DANIEL VERDUGO,
JEFFREY GLENN,
*Defendants/Appellants.*

On Appeal from the United States District Court for the
Central District of California
Case No. 5:21-cv-02008-FWS-E
Judge: Hon. Fred W. Slaughter

## APPELLANTS' OPENING BRIEF

*Lee H. Roistacher, Esq.
(SBN 179619)
Mitchell D. Dean, Esq.
(SBN 128926)
Dean Gazzo Roistacher LLP
440 Stevens Avenue, Suite 100
Solana Beach, CA 92075
Tel.: (858) 380-4683
Fax: (858) 492-0486
E-mail: lroistacher@deangazzo.com
        mdean@deangazzo.com

John D. Higginbotham (SBN 204179)
Neil D. Okazaki (SBN 201367)
Dean Derleth, City Attorney
City Attorney's Office
City of Corona
400 S. Vicentia Ave., 3rd Floor
Corona, CA 92882
Tel: (951) 279-3506
E-mail: john.higginbotham@coronaca.gov
        neil.okazaki@coronaca.gov

# TABLE OF CONTENTS

INTRODUCTION.................................................................17

STATEMENT OF JURISDICTION..................................19

ISSUES PRESENTED.....................................................20

STATEMENT OF THE CASE.........................................23

    A.    First Amended Complaint...............................23

    B.    Motions To Dismiss.......................................25

    C.    District Court Order.......................................26

STANDARD OF REVIEW...............................................27

SUMMARY OF ARGUMENT.........................................28

ARGUMENT....................................................................31

    A.    Qualified Immunity........................................31

    B.    District Court's Faulty Qualified Immunity
            Analysis.........................................................36

            1.    Failure To Conduct An "Individualized"
                 Inquiry.............................................36

            2.    District Court's Improper Analysis Of
                 Clearly Established Law......................40

    C.    Qualified Immunity Bars Long's Failure To
            Intervene Claim Against The Officers.............46

            1.    Long Fails To Plead Plausible Claims......47

  2. Long Failed To Meet Her Burden To
    Show Clearly Established Law...............50

D. Qualified Immunity Bars Long's Civil Rights
 Conspiracy Claims Against The Officers..........59

  1. The Intracorporate Conspiracy Doctrine
    Bars Long's Claims............................59

  2. Long Failed To Meet Her Burden To
    Show Clearly Established Law...............69

E. Qualified Immunity Bars Long's Fourteenth
 And Fourth Amendment Claims Against
 Anderson, Newman, And Verdugo For Failing
 To Collect Or Preserve Evidence....................71

  1. Long Fails To Plead Cognizable Claims....73

  2. Long Failed To Meet Her Burden Of
    Showing Clearly Established Law...........81

F. Qualified Immunity Bars Long's Fourteenth
 And Fourth Amendment Claims Against Weeks
 and Glenn For Fabricating Evidence...............83

  1. Long Fails To Allege A Plausible Claim....83

  2. Long Failed To Meet Her Burden To
    Show Clearly Established Law...............92

G. Qualified Immunity Bars Long's Fourteenth
 And Fourth Amendment Claims Against
 Anderson, Weeks, Newman, and Bloomfield
 For Suppressing Evidence............................94

  1. Long Fails To Allege A Plausible Claim....94

2.    Long Failed To Meet Her Burden To Show Clearly Established Law.............101

CONCLUSION...........................................................104

CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. 32(A)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NO. 23-55004...........................................105

STATEMENT OF RELATED CASES UNDER NINTH CIRCUIT RULE 28-2.6..............................................106

CERTIFICATE OF SERVICE....................................107

# TABLE OF AUTHORITIES

**Cases**

*Alcocer v. Mills*
 906 F.3d 944 (11th Cir. 2018)…………………………….36

*Alicia St. v. Leyshock*
 41 F.4th 987 (8th Cir. 2022)……………………………..70

*Arizona v. Youngblood*
 488 U.S. 51 (1988)…………………………………..*Passim*

*Ashcroft v. al-Kidd*
 563 U.S. 731 (2011)……………………………….19, 31, 32

*Ashcroft v. Iqbal*
 556 U.S. 662 (2009)………………….……………..*Passim*

*Avery v. City of Milwaukee*
 847 F.3d 433 (7th Cir. 2017)……………………………..87

*Bell Atl. Corp. v. Twombly*
 550 U.S. 544 (2007)……………………………………….28

*Black v. Montgomery County*
 835 F.3d 358 (3d Cir. 2016)…………………………..…84

*Bledsoe v. Carreno*
 53 F.4th 589 (10th Cir. 2022)…………………….....43, 58

*Bowie v. Maddox*
 642 F.3d 1122 (D.C. Cir. 2011)…………………..…..61, 62

*Bradford v. Scherschligt*
 803 F.3d 382 (9th Cir. 2015)……………………………..84

*Brady v. Maryland*
373 U.S. 83 (1963)...................................*Passim*

*Bruner v. Dunaway*
684 F.2d 422 (6th Cir. 1982)..........................52

*Byrd v. Brishke*
466 F.2d 6 (7th Cir. 1972)..........................52, 53

*Byrd v. Clark*
783 F.2d 1002 (11th Cir. 1986)........................52

*Caldwell v. City & County of San Francisco*
889 F.3d 1105 (9th Cir. 2018)........................88

*California v. Trombetta*
467 U.S. 479 (1984)...................................*Passim*

*Camreta v. Greene*
563 U.S. 692 (2011)...................................52

*Carrillo v. County of Los Angeles*
798 F.3d 1210 (9th Cir. 2015)..............82, 102, 103

*City of Escondido v. Emmons*
139 S. Ct. 500 (2019)...............................54

*Coleman v. City of Peoria*
925 F.3d 336 (7th Cir. 2019)........................87, 88

*Cooper v. Calderon*
255 F.3d 1104 (9th Cir. 2001)........................75

*Copperweld Corp v. Independence Tube Corp.*
467 U.S. 752 (1984)...............................59, 60

*Costanich v. Department of Soc. & Health Servs.*
627 F.3d 1101 (9th Cir. 2010)........................85

*Cunningham v. City of Wenatchee*
345 F.3d 802 (9th Cir. 2003)……………………..…..*Passim*

*Cunningham v. Gates*
229 F.3d 1271 (9th Cir. 2000)………………..………*Passim*

*David v. Kaulukukui*
38 F.4th 792 (9th Cir. 2022)…………………………19, 27

*Devereaux v. Abbey*
263 F.3d 1070 (9th Cir. 2001)………………..………*Passim*

*District of Columbia v. Wesby*
138 S. Ct. 577 (2018)……………………………..……*Passim*

*Estate of Williams v. Cline*
902 F.3d 643 (7th Cir. 2018)…………………..…..37, 38

*Fatai v. City & Cnty. of Honolulu*, 2021 U.S. Dist. LEXIS
130037 (D. Haw. July 13, 2021) …………………………70, 71

*Fazaga v. FBI*
965 F.3d 1015 (9th Cir. 2020)……………..........……*Passim*

*Felarca v. Birgeneau*
891 F.3d 809 (9th Cir. 2018)………………………………32

*Gagnon v. Ball*
696 F.2d 17 (2d Cir. 1982)…………………………..56, 57

*Gantt v. City of Los Angeles*
717 F.3d 702 (9th Cir. 2013)…………………………88, 90

*Gausvik v. Perez*
345 F.3d 813 (9th Cir. 2003)…………………………..86, 87

*Giglio v. United States*
405 U.S. 150 (1972)……………………………………95

*Gill v. City of Milwaukee*
    850 F.3d 335 (7th Cir. 2017)....................................92

*Gordon v. County of Orange*
    6 F.4th 961 (9th Cir. 2021)......................................35

*Grider v. City of Auburn*
    618 F.3d 1240 (11th Cir. 2010).......................46, 62, 70

*Guerrero v. RJM Acquisitions LLC*
    499 F.3d 926 (9th Cir. 2007)...................................68

*Hall v. Maioho-Pohina*
    2023 U.S. App. LEXIS 10811
    (9th Cir. May 3, 2023)...........................................49

*Halsey v. Pfeiffer*
    750 F.3d 273 (3d Cir. 2014)....................................86

*Hamby v. Hammond*
    821 F.3d 1085 (9th Cir. 2016)..................................52

*Harris v. Mahr*
    838 F. App'x 339 (10th Cir. 2020)............................55

*Hasbrouck v. Yavapai County*
    2021 U.S. Dist. LEXIS 18360
    (D. Ariz. Feb. 1, 2021)...........................................61

*Hendricks v. Calderon*
    70 F.3d 1032 (9th Cir. 1995)...................................91

*Hoefer v. Fluor Daniel, Inc.*
    92 F.Supp.2d 1055 (C.D. Cal. 2000).........................61

*Hooper v. Shinn*
    985 F.3d 594 (9th Cir. 2021)...................................96

*Hughes v. Rodriguez*
    31 F.4th 1211 (9th Cir. 2022)............................42, 43

*Hunter v. Bryant*
    502 U.S. 224 (1991)...............................................19

*Hurt v. Wise*
    880 F.3d 831 (7th Cir. 2018).............................56, 57

*Hyde v. City of Willcox*
    23 F.4th 863 (9th Cir. 2022).............................19, 27

*In re Long*
    10 Cal.5th 764 (2020).................................18, 91, 98

*Jackson v. Brown*
    513 F.3d 1057 (9th Cir. 2008)..........................*Passim*

*Jackson v. City of Cleveland*
    925 F.3d 793 (6th Cir. 2019)......................46, 66, 70

*Japanese Vill., Ltd. Liab. Co. v. Fed. Transit Admin.*
    843 F.3d 445 (9th Cir. 2016)..................................26

*Jones v. Cannon*
    174 F.3d 1271 (11th Cir. 1999).........................44, 58

*Keates v. Koile*
    883 F.3d 1228 (9th Cir. 2018)................................27

*Khoja v. Orexigen Therapeutics, Inc.*
    899 F.3d 988 (9th Cir. 2018).................................28

*Kirkpatrick v. County of Washoe*
    843 F.3d 784 (9th Cir. 2016).................................33

*Kisela v. Hughes*
    138 S. Ct. 1148 (2018)................................32, 57, 92

9

*K.J.P. v. City of Santee*
        748 F. App'x 133 (9th Cir. 2019)…………………….....37

*Kramer v. Cullinan*
        878 F.3d 1156 (9th Cir. 2018)……………………………33

*Kroll v. County of Los Angeles*
        2021 U.S. Dist. LEXIS 195693
        (C.D. Cal. June 28, 2021)……………………….……61, 71

*Kyles v. Whitley*
        514 U.S. 419 (1995)…………………………...……………102

*Lane v. Franks*
        573 U.S. 228 (2014)………………………………………33

*Leer v. Murphy*
        844 F.2d 628 (9th Cir. 1988)……….………..…..47, 48, 76

*Livers v. Schenck*
        700 F.3d 340 (8th Cir. 2012)………………………………58

*Long v. Johnson*
        736 F.3d 891 (9th Cir. 2013)……………………………17

*Long v. Lattimore*
        2012 U.S. Dist. LEXIS 56652
        (C.D. Cal. Mar. 16, 2012)……………………………………17

*Long v. Lattimore*
        2012 U.S. Dist. LEXIS 56655 (Apr. 19, 2012)………....17

*Lozano v. New Jersey*
        9 F.4th 239 (3d Cir. 2021)………………………………57

*Manansingh v. United States*
        2023 U.S. App. LEXIS 7320
        (9th Cir. Mar. 28, 2023)……………………………60, 69

*Mattos v. Agarano*
          661 F.3d 443 (9th Cir. 2011)...................................35

*McSherry v. City of Long Beach*
          423 F.3d 1015 (9th Cir. 2005)................................85

*Mellen v. Winn*
          900 F.3d 1085 (9th Cir. 2018)....................…........95, 101

*Miller v. Gettel*
          2023 U.S. App. LEXIS 8997
          (6th Cir. Apr. 14, 2003)……………………………..…54

*Miller v. Vasquez*
          868 F.3d 1116 (9th Cir 1989)………………........…*Passim*

*Morris v. Ylst*
          447 F.3d 735 (9th Cir. 2006)……………..……..97, 100

*Moore v. City of Oakland*
          242 F.Supp.3d 891 (N.D. Cal. 2017)…………….…....76

*Mullenix v. Luna*
          577 U.S. 7 (2015)…………………………........27, 41, 54

*Napue v. Illinois*
          360 U.S. 264 (1959)…………………………………….94

*Norton v. Arpaio*
          2015 U.S. Dist. LEXIS 199451
          (D. Ariz. Nov. 20, 2015)…………………………………61

*O'Neill v. Krzeminski*
          839 F.2d 9 (2d Cir. 1988)……………………….…52, 57

*Onyiah v. City of Philadelphia*
          2023 U.S. Dist. LEXIS 40386
          (E.D. Pa. Mar. 10, 2023)…………………………………58

*Ortiz v. Stewart*
　　149 F.3d 923 (9th Cir. 1998)...................................99

*Pasene v. Correa*, __ F.Supp.3d __,
　　2023 U.S. Dist. LEXIS 27691
　　(D. Haw. Feb. 17, 2023)........................................48

*Penaloza v. City of Rialto*
　　836 F. App'x 547 (9th Cir. 2020)...........................51

*Pennsylvania v. Ritchie*
　　480 U.S. 39 (1987)................................................91

*People v. Long*
　　2008 Cal. App. Unpub. LEXIS 9448 (Nov. 21, 2008)...17

*People v. Long*
　　2009 Cal. LEXIS 1483 (Feb. 25, 2009)....................17

*People v. Long*
　　2018 Cal. App. Unpub. LEXIS 3097 (May 3, 2018)....18

*Phillips v. Woodford*
　　267 F.3d 966 (9th Cir. 2001)................................77

*Putman v. Gerloff*
　　639 F.2d 415 (8th Cir. 1981)................................53

*Pyle v. State*
　　317 U.S. 213 (1942)..............................................94

*Ramirez v. Butte-Silver Bow Cty.*
　　298 F.3d 1022 (9th Cir. 2002).........................*Passim*

*Richards v. County of San Bernardino*
　　39 F.4th 562 (9th Cir. 2022).............................84, 85

*Reese v. County of Sacramento*
  888 F.3d 1030 (9th Cir. 2018)................................31

*Richards v. County of San Bernardino*
  2022 U.S. App. LEXIS 17535
  (9th Cir. June 24, 2022)......................................80

*Rosales-Martinez v. Palmer*
  753 F.3d 890 (9th Cir. 2014)................................28

*Rosenfeld v. Talamantes*
  2022 U.S. Dist. LEXIS 132566
  (C.D. Cal. May 23, 2022)..........................60, 61

*Rubalcava v. City of San Jose*
  2021 U.S. Dist. LEXIS 132281
  (N.D. Cal. July 15, 2021)...................................48

*Sabra v. Maricopa County Cmty. Coll. Dist.*
  44 F.4th 867 (9th Cir. 2022)........................35, 54, 59

*Sakamoto v. Duty Free Shoppers, Ltd.*
  764 F.2d 1285 (9th Cir. 1985)..............................68

*S.B. v. County of San Diego*
  864 F.3d 1010 (9th Cir. 2017)..........................33, 52

*Sharp v. County of Orange*
  871 F.3d 901 (9th Cir. 2017)......................35, 41, 50

*Singh v. Prunty*
  14 F.3d 1157 (9th Cir. 1998).......................102, 103

*Smith v. Arthur Andersen Ltd. Liab. P'ship*
  421 F.3d 989 (9th Cir. 2005)................................51

*Spencer v. Peters*
  857 F.3d 789 (9th Cir. 2017).........................84, 85

*Strickler v. Greene*
527 U.S. 263 (1999)................................39, 95, 102

*Sykes v. California*
497 F.2d 197 (9th Cir. 1974)..........…..................44, 45

*Tatum v. Moody*
768 F.3d 806 (9th Cir. 2014).................................96

*Tennison v. City & County of San Francisco*
570 F.3d 1078 (9th Cir. 2009).......................103, 104

*Thornton v. City of St. Helens*
425 F.3d 1158 (9th Cir. 2005)...........................68, 69

*Thorpe v. City of Philadelphia*
2020 U.S. Dist. LEXIS 158682
(E.D. Pa. Aug. 31, 2020).....................................58

*Tobias v. Arteaga*
996 F.3d 571 (9th Cir. 2021)......................47, 52, 56

*Torres v. City of St. Louis*
39 F.4th 494 (8th Cir. 2022).......................46, 68, 70

*Trujillo-Lopez v. City of Vallejo*
2022 U.S. Dist. LEXIS 203467
(N.D. Cal. Nov. 8, 2022).....................................60

*Turner v. United States*
137 S. Ct. 1885 (2017)..........…..........................96

*United States v. Agurs*
427 U.S. 97 (1976)......................…...........96, 101

*United States v. Bagley*
473 U.S. 667 (1985)........................................102

*United States v. Butler*
     567 F.2d 885 (9th Cir. 1978)................................102

*United States v. Cooper*
     983 F.2d 928 (9th Cir. 1993)..................................82

*United States v. Crawford*
     372 F.3d 1048 (9th Cir. 2004)...............................89

*United States v. Drake*
     543 F.3d 1080 (9th Cir. 2008)...............................75

*United States v. Emor*
     573 F.3d 778 (D.C. Cir. 2009)...............................99

*United States v. Koon*
     34 F.3d 1416 (9th Cir. 1994)..........................*Passim*

*United States v. Martinez-Martinez*
     369 F.3d 1076 (9th Cir. 2004)...............................75

*United States v. Olsen*
     704 F.3d 1172 (9th Cir. 2013)...............................98

*United States v. Oruche*
     484 F.3d 590 (D.C. Cir. 2007)...............................99

*United States v. Robertson*
     895 F.3d 1206 (9th Cir. 2018)...............................74

*United States v. Sanchez*
     176 F.3d 1214 (9th Cir. 1999)...............................98

*United States v. Vgeri*
     51 F.3d 876 (9th Cir. 1995)..................................99

*Ventura v. Rutledge*
     978 F.3d 1088 (9th Cir. 2020)....................42, 43, 92

*W. Watersheds Project v. United States DOI*
    677 F.3d 922 (9th Cir. 2012)………………………………51

*Weimer v. County of Fayette*
    972 F.3d 177 (3d Cir. 2020)…………………………44, 58

*West v. City of Caldwell*
    931 F.3d 978 (9th Cir. 2019)………………….....32, 36, 50

*White v. Pauly*
    580 U.S. 73 (2017)…………………………….......……*Passim*

*Williams v. Woodford*
    384 F.3d 567 (9th Cir. 2002)…………..………..89, 90, 91

*Yang v. Hardin*
    37 F.3d 282 (7th Cir. 1994)………………………………56

*Ziglar v. Abbasi*
    582 U.S. 120 (2017)…………………………….....*Passim*

**Statutes**

28 U.S.C. § 1291…………………………………………………19

28 U.S.C. § 1331………………………………………….....19

42 U.S.C. § 1983……………………………………………....*Passim*

42 U.S.C. § 1985………………………………………62, 64, 70

Fed. R. App. Proc. 4…………………………………………20

Fed. R. Civ. P. 12(b)(6)……………………………………27

Fed. R. Evid. 701………………………………………………98

# INTRODUCTION

City of Corona police officers Thomas Weeks, Ronald Anderson, Daniel Bloomfield, Robert Newman, Daniel Verdugo, and Jeffrey Glenn (collectively "Officers," unless context requires otherwise) appeal from the district court's order denying their qualified immunity-based motion to dismiss Kimberly Long's four 42 U.S.C. section 1983 claims alleging police misconduct caused her "wrongful conviction."

In 2005, Long was convicted for the 2003 murder of her live-in boyfriend Oswaldo Conde. After years of unsuccessful post-conviction challenges in state and federal courts,[1] on an order to show cause from the California Supreme Court, the trial court vacated Long's conviction in 2016 for ineffective assistance of counsel for not consulting a time of death expert but denied Long's factual innocence claim. ER-128-

---

[1] *E.g., Long v. Johnson* 736 F.3d 891 (9th Cir. 2013); *Long v. Lattimore,* 2012 U.S. Dist. LEXIS 56652 (C.D. Cal. Mar. 16, 2012); *Long v. Lattimore*, 2012 U.S. Dist. LEXIS 56655 (Apr. 19, 2012); *People v. Long*, 2009 Cal. LEXIS 1483 (Feb. 25, 2009); *People v. Long*, 2008 Cal. App. Unpub. LEXIS 9448 (Nov. 21, 2008).

132.  On the government's appeal, the California court of appeal reversed the ineffective assistance of counsel finding, *People v. Long*, 2018 Cal. App. Unpub. LEXIS 3097 (May 3, 2018), but the California Supreme Court agreed with the trial court and vacated Long's conviction in 2020.  *In re Long*, 10 Cal.5th 764, 767 (2020).

Not once in her post-conviction briefing did Long ever claim constitutional misconduct by the Officers.  *See* District Court Electronic Case Filing System (ECF) Doc. 73, pp. 3-4, 6-179 (post-conviction briefs).

Only now in her civil suit does Long claim being "wrongfully convicted" because the Officers suppressed, fabricated, failed to collect, and failed to preserve evidence.

Qualified immunity insulates the Officers from liability on Long's section 1983 claims.  Concluding otherwise, the district court erred.

Although this appeal follows the denial of a motion to dismiss, the Officers' appeal is no less important.

"[R]esolving immunity questions at the earliest possible stage in litigation" is crucial, *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), because "qualified immunity is 'effectively lost if a case is erroneously permitted to go to trial,'" *White v. Pauly*, 580 U.S. 73, 79 (2017). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'"). This includes resolution, when appropriate, of qualified immunity questions raised on pleading challenges. *See, e.g., Hyde v. City of Willcox*, 23 F.4th 863, 873-75 (9th Cir. 2022).

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Long's section 1983 claims under 28 U.S.C. section 1331.

This Court has jurisdiction over this interlocutory appeal of the district court's order denying the Officers qualified immunity. 28 U.S.C. § 1291; *David v. Kaulukukui*, 38 F.4th 792, 799 (9th Cir. 2022); *Hyde,* 23 F.4th at 869.

Jurisdiction exists to determine whether Long sufficiently alleges constitutional violations against each officer and whether the unconstitutionality of each officer's conduct was "clearly established" in 2003. *Iqbal*, 556 U.S. 672-75.

On January 4, 2023, the Officers timely appealed the district court's December 27, 2022 order, ER-28-29. Fed. R. App. Proc. 4.

## ISSUES PRESENTED

This appeal presents the following issues:

\* Did the district court err in denying qualified immunity to the Officers by: (1) not conducting the required "individualized" examination of whether Long's factual allegations against each of the six officers plausibly alleged viable claims against each officer; and (2) relying on general propositions of constitutional law supporting Long's liability theories divorced from Long's factual allegations underlying her liability

theories to conclude the law was "clearly established" in 2003?

\* Are the Officers entitled to qualified immunity from liability on Long's section 1983 claim for failure to intervene in each other's Constitutional violations because: (1) Long did not allege how each officer failed to intervene in another's unconstitutional conduct while it was occurring; or (2) Long failed to meet her burden to show it was "clearly established" in 2003 that an officer had a constitutional obligation to intervene in another's suppression, fabrication, failure to collect, and failure to preserve evidence?

\* Are the Officers entitled to qualified immunity from liability on Long's section 1983 claim for conspiracy to violate civil rights because: (1) the intracorporate conspiracy doctrine precludes the Officers – members of the same police department – from conspiring to violate Long's

civil rights; or (2) Long failed to meet her burden
to show it was "clearly established" in 2003 that
section 1983 conspiracy claims are resistant to
the intracorporate conspiracy doctrine?

* Are Anderson, Newman, and Verdugo entitled to
qualified immunity from liability on Long's
section 1983 claims for failing to collect and
failing to preserve evidence because: (1) Long
fails to plausibly allege a bad faith failure to
collect or preserve exculpatory evidence against
Anderson, Newman, or Verdugo; or (2) Long
failed to meet her burden to show it was "clearly
established" in 2003 that a police officer has a
constitutional obligation to assume fingerprints
or DNA evidence from a crime scene are
exculpatory and therefore must collect and test
the evidence before disposing of it?

* Are Weeks and Glenn entitled to qualified
immunity from liability on Long's section 1983

claim for fabricating evidence because: (1) Long does not plausibly allege deliberate fabrication of evidence by Weeks or Glenn; or (2) Long failed to meet her burden to show it was "clearly established" in 2003 that any interviewing tactics Weeks or Glenn used on witnesses were so coercive or abusive that all reasonable officers would have understood the tactics would generate fabricated evidence?

\*     Are Weeks, Anderson, Newman, and Bloomfield entitled to qualified immunity from liability on Long's section 1983 claim for suppressing evidence because: (1) Long failed to plausibly allege suppression of exculpatory evidence by Weeks, Anderson, Newman, or Bloomfield; or (2) Long failed to meet her burden to show it was "clearly established" in 2003 that Weeks, Anderson, Newman, or Bloomfield suppressed exculpatory evidence?

## STATEMENT OF THE CASE

### A.    First Amended Complaint

After the district court found all Long's claims insufficiently pled and dismissed her complaint, ECF Doc. 57, Long filed her first amended complaint ("complaint"). ER-34-70.

Long's complaint alleges four section 1983 claims against the Officers: a Fourteenth Amendment substantive due process claim (Count I); a Fourth Amendment malicious prosecution claim (Count II); a failure to intervene in constitutional violations claim (Count III); and a conspiracy to violate constitutional rights claim (Count IV).  ER-53-59.

Although plead as a single "count," Long's Fourteenth Amendment claim is four distinct claims asserted against different "groups" of officers: (1) suppressing exculpatory evidence against Anderson, Newman, Weeks, and Bloomfield, ER-42-46 ¶¶ 41-55; (2) fabricating evidence against Weeks and Glenn, ER-46-49 ¶¶ 56-68; (3); failing to collect evidence against Anderson, Newman, and Verdugo;

and (4) failing to preserve evidence against Anderson, Newman, and Verdugo, ER-49-50 ¶¶ 69-73.[2]

Long's Fourth Amendment malicious prosecution claim alleges the Officers prosecuted her without probable cause by violating her substantive due process rights. ER-42-50, 55-56.

Long's failure to intervene claim alleges the Officers failed to intervene in each other's suppression, fabrication, failure to collect, and failure to preserve evidence. ER-42-50, 56-57.

Long's conspiracy to violate civil rights claim alleges the Officers conspired to frame her for murder. ER-42-50, 58-59.

---

[2] The Officers later expound on the allegations relating to each claim. However, the district court, relying on judicially noticeable public records, previously found untrue Long's allegation regarding the suppression of her blood free jacket. ECF Doc. 57, pp. 15-16. That allegation is accordingly not later discussed.

## B.    Motions To Dismiss

The Officers brought qualified immunity challenges to each of Long's section 1983 claims arguing Long failed to plead plausible claims against each officer but, even if she did, the law in 2003 did not clearly establish the wrongfulness of the specific conduct alleged against each officer for each of Long's liability theories.  ECF Docs. 70-74. Long opposed, and the Officers replied.  ECF Docs. 83-86, 88-90.

## C.    District Court Order

On December 27, 2022, the district court rejected the Officers' arguments finding Long sufficiently alleged clearly established constitutional violations.[3]  ER-4-26.

---

[3] The district court took judicial notice of records relating to Long's criminal proceedings submitted with the subject motion to dismiss and a prior motion to dismiss.  ER-10-12; *see* ECF Docs. 73, 30.  Because the material is in the record, no separate request for judicial notice to this Court is necessary. *Japanese Vill., Ltd. Liab. Co. v. Fed. Transit Admin.*, 843 F.3d 445, 454 (9th Cir. 2016)

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's denial of a motion to dismiss based on qualified immunity. *David*, 38 F.4th at 799. The Court "consider[s] whether the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware 'in light of the specific context of the case.'" *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

"Under Rule 12(b)(6), a complaint should be dismissed if it fails to include 'enough facts to state a claim to relief that is plausible on its face.'" *Hyde*, 23 F.4th at 869. "A complaint's claims are plausible when the pleaded facts 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements," "conclusory statements," and "'legal conclusion[s] couched as [] factual allegation[s]'" are insufficient. *Iqbal*,

556 U.S. at 678. Allegations establishing potential liability are likewise insufficient. *Id.* at 679 ("Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.") (simplified); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

The court can consider judicially noticeable facts when ruling on a motion to dismiss. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *see Rosales-Martinez v. Palmer*, 753 F.3d 890, 894-95 (9th Cir. 2014 (taking judicial notice of judicial proceedings of other courts because material "provide[d] relevant and material details adding to and clarifying the allegations of the complaint").

## SUMMARY OF ARGUMENT

This case is not a typical "wrongful conviction" case based on government misconduct. No court found the

Officers did anything unconstitutional. That Long's more than competent post-conviction attorneys (Federal Defenders and California Innocence Project) never raised constitutional misconduct by the Officers speaks volumes as to why Long has twice been unable to make more than insufficient generalized and non-specific allegations of misconduct by the Officers.

The district court erred in its qualified immunity analysis by conducting a superficial and non-individualized analysis of Long's allegations against each officer and further erred by relying on broad general legal principals rather than examining the state of the law in 2003 to determine whether each officer's specific conduct violated the Constitution.

Government officials *have* qualified immunity *unless* a complaint's allegations sufficiently show violations of clearly established constitutional obligations. It is Long's burden to overcome this presumption, and allegations that might be "close enough" for some cases do not sufficiently do that. Nor

is it an appropriate answer in the qualified immunity context to wait for the issues to be "hashed out" during discovery or evaluated on summary judgment.

Although this is true for all Long's insufficiently pled claims, it is especially true for her conspiracy and failure to intervene claims because the Officers are entitled to qualified immunity on those two claims even assuming Long's general allegations are sufficient and true.

The conspiracy claim fails because the intracorporate conspiracy doctrine precludes it or intracorporate conspiracy liability under section 1983 did not in 2003, and does not today, clearly exist, and the failure to intervene claim fails because of the absence of a clearly established constitutional obligation to intervene in the suppression, fabrication, failure to collect, or failure to preserve evidence.

By rejecting the Officers' assertion of qualified immunity, the district court placed the precise litigation burdens on the Officers that qualified immunity serves to avoid.

## ARGUMENT

## A.    Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Reese v. County of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).  "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.  When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Courts engage in a two-pronged analysis to determine whether qualified immunity applies. "Qualified immunity shields federal and state officials from money damages *unless a plaintiff pleads facts* showing (1) that the official violated a statutory or constitutional right, and (2) that the

right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S at 735 (emphasis added); *West v. City of Caldwell*, 931 F.3d 978, 982-83 (9th Cir. 2019) ("Police officers *have* qualified immunity for their official conduct *unless* (1) they violate a federal statutory or constitutional right and (2) that right was clearly established at the time of the challenged conduct.") (emphasis added) (citing *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)).

The plaintiff bears the burden of establishing both prongs of the qualified immunity analysis. *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018).

To be "clearly established," precedent existing at the time must "squarely govern[] the specific facts" of the present case, *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018), such that it "placed the [un]constitutionality of the officer's conduct 'beyond debate,'" *Wesby*, 138 S. Ct. at 589. *See also White,* 580 U.S. at 79 ("[T]he clearly established law must be 'particularized' to the facts of the case.").

The "clearly established" standard is "demanding" and "exacting." *Wesby*, 138 S. Ct. at 589; *Kirkpatrick v. County of Washoe*, 843 F.3d 784, 792 (9th Cir. 2016) (en banc); *see also S.B. v. County of San Diego*, 864 F.3d 1010, 1015, 1017 (9th Cir. 2017) (hearing the Supreme Court's instructions on qualified immunity "loud and clear" and recognizing its "exacting standards").

"Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby*, 138 S. Ct. at 589 (simplified). "So long as existing case law 'did not preclude' an official from reasonably believing that his or her conduct was lawful, the official has a right to qualified immunity." *Kramer v. Cullinan*, 878 F.3d 1156, 1163 (9th Cir. 2018) (quoting *Lane v. Franks*, 573 U.S. 228, 243 (2014)).

Thus, "[t]o be clearly established ... [t]he rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive

authority. It is not enough that the rule is suggested by then-existing precedent." *Wesby*, 138 S. Ct. at 589-90 (simplified). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know." *Id.* at 590 (simplified).

"The clearly established standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *Id.* (simplified). "The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity." *Id.* (simplified).

"[C]ourts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* (simplified). "A rule is too general if the unlawfulness of the

officer's conduct does not follow immediately from the conclusion that the rule was firmly established." *Id.* (simplified).

As this Court has recognized, "[e]xcept in the rare case of an obvious instance of constitutional misconduct" "[p]laintiffs must point to prior case law that articulates a constitutional rule specific enough to alert these [officers] in this case that their particular conduct was unlawful."[4] *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017).

To achieve that kind of notice, "'the prior precedent must be "controlling"—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a "consensus" of courts

---

[4] "[T]he bar for finding such obviousness is quite high." *Mattos v. Agarano*, 661 F.3d 443, 42 (9th Cir. 2011) (en banc). As recently said: "[W]e have repeatedly emphasized that [obvious] cases are few and far between, [citation], and thus, we are hesitant to find a right clearly established without a body of relevant case law." *Sabra v. Maricopa County Cmty. Coll. Dist.*, 44 F.4th 867, 888 (9th Cir. 2022).

outside the relevant jurisdiction.'"[5] *Gordon v. County of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (quoting *Sharp*, 871 F.3d at 911); *see also West*, 931 F.3d at 983 ("we must locate a controlling case that 'squarely governs the specific facts at issue'").

## B. District Court's Faulty Qualified Immunity Analysis

### 1. Failure To Conduct An "Individualized" Inquiry

A proper qualified immunity analysis is "individualized" requiring "a court [to] carefully examine the specific factual allegations against each individual defendant." *Cunningham v. Gates,* 229 F.3d 1271, 1287 (9th Cir. 2000); *accord Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) ("[E]ach defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions.").

---

[5] The Supreme Court has "not yet decided what precedents - other than [its] own - qualify as controlling authority for purposes of qualified immunity." *Wesby*, 138 S. Ct. at 591 n. 8.

Long alleges four section 1983 claims against six different officers based on four distinct theories of liability – suppressing evidence, fabricating evidence, not collecting evidence, and not preserving evidence. And not all Long's theories of liability are alleged against all the Officers. Even Long's distinct liability theories are often based on different conduct by different officers. *E.g.*, ER-42-46 ¶¶ 41-55 (describing different evidence different officers allegedly suppressed); ER-46-49 ¶¶ 56-68 (describing different evidence different officers fabricated).

After articulating the elements of Long's claims, the district court *generally* recited Long's allegations against each officer. ER-14-17.

Not done was "an individualized assessment of the conduct of each of the various defendants in their myriad roles" and, thus, the district court did not dig deep enough into Long's allegations for a proper qualified immunity analysis. *K.J.P. v. City of Santee*, 748 F. App'x 133, 134 (9th Cir. 2019); *see also Estate of Williams v. Cline*, 902 F.3d 643,

652 (7th Cir. 2018) ("[E]ach defendant-officer had a different degree of contact with Williams and had different assigned responsibilities with respect to the apprehension of Williams and investigation of the alleged armed robbery. Although the district court's recitation of facts acknowledges the officers' varying encounters with Williams, its qualified-immunity analysis lacks any individualized assessment.").

Here are three examples of the district court's generalized analysis.

Regarding Long's suppressing evidence claim, the district court observed Long alleged Anderson, Weeks, and Bloomfield "suppressed reports about Bugarski and Lovejoy" and Newman "suppressed interviews with Lovejoy." ER-16-17.

But beyond Long's vague reference to "reports" and "interviews," the district court never examined what evidence Long alleged the reports or interviews contained. This is a necessary examination because suppressing reports or interviews is not itself unconstitutional; due process is

violated *only if* they contain exculpatory or impeachment evidence. *Strickler v. Greene*, 527 U.S. 263, 281-82; *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Thus, the only way to determine if Long plausibly alleged Anderson, Weeks, Newman, or Bloomfield suppressed evidence in violation of due process is to examine whether each specific report or interview allegedly suppressed by each officer contained *Brady* evidence. The district court did not do this.

Regarding Long's fabricating evidence claim, the district court observed Long alleged Weeks "manipulated witnesses Oscar Castaneda, Jeff Dills and Linda Alexander" and Glenn "manipulated a neighborhood witness." ER-16-17.

Manipulating a witness, however, is not itself unconstitutional. Missing was the necessary analysis of whether Long sufficiently alleged Weeks or Glenn engaged coercive or abusive interviewing techniques known to

generate fabricated evidence.  *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001).

Regarding Long's failure to collect and preserve evidence claims, the district court observed Anderson, Glenn, and Newman "failed to collect evidence from the scene" and "destroyed physical evidence collected at the scene."  ER-16-17.

Failing to collect or failing to preserve evidence is not a constitutional violation.  The district court failed to examine Long's allegations to determine if she sufficiently alleged a bad faith failure to collect or preserve known exculpatory evidence.  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *Miller v. Vasquez*, 868 F.3d 1116, 1119-20 (9th Cir 1989).

Those three examples amply show the absence of the required "individualized" qualified immunity analysis.

2.     **District Court's Improper Analysis Of Clearly Established Law**

Regarding Long's due process claims, the district court stated Long "alleges Defendants withheld, suppressed, and destroyed exculpatory and impeachment evidence, fabricated

40

and manufactured affirmative evidence, and failed to collect evidence." ER-18. Those are Long's theories. The district court then cited general propositions of constitutional law set forth in *Brady, Devereaux,* and *Youngblood* and said: "Based on the law cited, the court concludes the law regarding *Brady*, fabrication of evidence, and a failure to preserve evidence was clearly established in 2003 at the time of Defendants' investigation." ER-18-19.

The district court's analysis is precisely what the Supreme Court rejects – a reliance on general constitutional principles rather than an officer's actual conduct. *Wesby*, 138 S. Ct. at 589-90. The district court not only failed to define the constitutional violations in terms of each officer's "particular conduct" but also failed to examine whether precedent existing in 2003 placed "beyond debate" the wrongfulness of each officer's "particular conduct." *White*, 137 S. Ct. at 551; *Mullenix*, 577 U.S. at 11; *see also Sharp*, 871 F.3d at 910 ("The Supreme Court has repeatedly instructed that we examine 'whether the violative nature of

particular conduct is clearly established' by controlling precedent, not whether the conduct violates a general principle of law.").

A proper qualified immunity analysis required the district court to first examine the underlying facts alleged against each officer to determine whether Long plausibly alleged due process claims for suppressing, fabricating, failing to collect, and failing to preserve evidence, and then look to precedent existing in 2003 to determine whether "every reasonable officer," *Ventura v. Rutledge*, 978 F.3d 1088, 1091 (9th Cir. 2020), would have known the specific conduct alleged against each officer "in this case" was wrongful in the situation presented to "these officers," *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022). This was not done.

Regarding Long's failure to intervene claim, the district court cited *Cunningham*, 229 F.3d at 1289 for the proposition that officers have a duty to intervene "'when fellow officers violate the constitutional rights of a suspect or

other citizen.'" ER-19.  Again, "[b]ased on the law cited," the district court concluded "the law regarding a failure to intervene was clearly established in 2003."  ER-19.

But *Cunningham's* broad constitutional proposition is not fact specific to this case.  *Cunningham* was an excessive force case.  A case about intervening in excessive force would not provide notice to all reasonable officers of a constitutional obligation to intercede in the constitutional violations Long alleges.  *Hughes*, 31 F.4th at 1223; *Ventura*, 978 F.3d at 1091.

Denying qualified immunity required either controlling precedent or a consensus of cases placing beyond debate the existence of an officer's constitutional obligation in 2003 to intervene in another's suppression, fabrication, failure to collect, and failure to preserve evidence.

Controlling precedent does not exist and a persuasive body of case law evidences the *absence* of such a clearly established intervention obligation. *See, e.g., Bledsoe v. Carreno*, 53 F.4th 589, 617 (10th Cir. 2022) (failure to

intervene liability for violations of constitutional rights regarding suppression and fabrication of evidence not clearly established in 1999); *Weimer v. County of Fayette*, 972 F.3d 177, 191-92 (3d Cir. 2020) (not clearly established between 2001-2006 that a prosecutor has a duty to intervene to prevent an unconstitutional police investigation); *Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999) ("While officers have been subject to liability for failing to intervene when another officer uses excessive force" "[t]here is no controlling authority clearly establishing that once a police officer knows another officer has fabricated a confession in a police report for a warrantless arrest, that police officer has a constitutional duty to intervene to stop the other officer's conduct.").

Regarding Long's civil rights conspiracy claim, the district court cited *Sykes v. California*, 497 F.2d 197, 200 (9th Cir. 1974) for the elements of a section 1983 conspiracy claim and then concluded, once again, "[b]ased on the law cited," the "law regarding conspiracy to violate civil rights

was clearly established in 2003." ER-20. A case setting forth the elements of a conspiracy claim under section 1983 does not suffice.

Moreover, the Officers argued it was not clearly established in 2003 that the intracorporate conspiracy doctrine did not bar section 1983 conspiracy claims. *See Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (discussing doctrine). *Sykes* did not address that issue, and the district court's response to the Officers' argument was relegated to a footnote:

> Defendants argue the intra-corporate conspiracy doctrine bars this claim but also concede that 'the Ninth Circuit has not held the intracorporate conspiracy doctrine applies to civil rights claims.' [Citation]. In the absence of binding law holding the doctrine applies to Section 1983 claims, the court declines to find that the claim is barred.

ER-20.

The district court's analysis is backward.

The absence of this Court's consideration of the issue means there is no precedent from this Court on the issue,

and there is also no precedent from the Supreme Court on the issue.

Thus, the Officers had qualified immunity unless a persuasive body of law from other courts placed beyond debate the inapplicability of the intracorporate conspiracy doctrine to section 1983 conspiracy claims.

That body of law does not exist. *See Torres v. City of St. Louis*, 39 F.4th 494, 507 (8th Cir. 2022) ("it is not clearly established that the intracorporate conspiracy doctrine does not apply to § 1983 conspiracy claims"). Indeed, only two circuit courts have squarely addressed the issue, and each held the intracorporate conspiracy doctrine bars section 1983 conspiracy claims. *Jackson v. City of Cleveland*, 925 F.3d 793, 817-18 (6th Cir. 2019); *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010).

## C. Qualified Immunity Bars Long's Failure To Intervene Claim Against The Officers

Long alleges the Officers violated her constitutional rights by suppressing, fabricating, not collecting, and not preserving evidence. ER-42-50 ¶¶ 41-73. Long further

alleges "one or more of the Defendants stood by without intervening to prevent the violation of [her] constitutional rights, even though they had the opportunity to do so during [her] prolonged prosecution and trial." ER-57 ¶ 115.

## 1. Long Fails To Plead Plausible Claims[6]

"'[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen'" "'if they had an opportunity to intercede.'" *Tobias v. Arteaga*, 996 F.3d 571, 583-84 (9th Cir. 2021) (citations omitted).

To plead a section 1983 claim, Long must "set forth specific facts" outlining each defendant's wrongdoing. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). Long must show "that each [officer] defendant, through the [officer's] own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Long did not do this, ER-50 ¶ 76; ER-

---

[6] This discussion presumes failure to intervene liability extends to the constitutional claims Long alleges. The next discussion shows that it does not or, at the very least, it is not clearly established.

56-57 ¶¶ 114-119, and the district court did not address the issue. ER-16-17.

For example, Long "does not specify which individual defendants are liable for which failures to intervene. Nor does [s]he allege facts demonstrating that each individual had an opportunity to intervene in the conduct of the other individual defendants." *Rubalcava v. City of San Jose*, 2021 U.S. Dist. LEXIS 132281, at *34 (N.D. Cal. July 15, 2021).

Long's allegation that "one of more of the Defendants" failed to intervene "even though they had the opportunity to do so" constitutes nothing more than inadequate "group pleading" and insufficient recitations of a failure to intervene claim's elements. *Iqbal*, 556 U.S. at 678; *see Pasene v. Correa*, __ F.Supp.3d __, 2023 U.S. Dist. LEXIS 27691, at *32 (D. Haw. Feb. 17, 2023) ("[A] plaintiff may not attribute general liability for an alleged wrong to a group of defendants but rather must make 'individualized' allegations.") (quoting *Leer*, 844 F.2d at 634).

Long's claims are also insufficient because they allege a failure to intervene *after* the constitutional violation purportedly occurred. ER-57 ¶ 115 (alleging officers had the opportunity to intervene "during [her] prolonged prosecution and trial"). The district court did not address this issue either. ER-16-17.

Long's after-the-fact intervention claim is not viable because failure to intervene liability exists only if the officer can realistically intercede. C*unningham*, 229 F.3d at 1290. Indeed, failure to intervene liability exists to stop the constitutional violation from occurring in the first instance. *See id*. ("officers who were not present at the time of the shootings could not intercede to prevent their fellow officers from shooting" and "non-shooting officers who were present at the shootouts had no 'realistic opportunity' to intercede").

No officer can intervene to prevent a completed constitutional violation from occurring. *See Hall v. Maioho-Pohina*, 2023 U.S. App. LEXIS 10811, at *5 (9th Cir. May 3, 2023) (unpub.) (observing in the context of supervisor

liability that "[i]t does seem difficult to prevent what has already happened").

## 2. Long Failed To Meet Her Burden To Show Clearly Established Law

Long had to identify a "controlling case" existing in 2003 "that 'squarely governs the specific facts at issue'" here. *West*, 931 F.3d at 983. This required Long to cite Supreme Court or Ninth Circuit precedent existing in 2003 establishing the Officers had a duty to intervene to prevent another from suppressing, fabricating, failing to collect, and failing to preserve evidence. *Sharp*, 871 F.3d at 911.

Absent that controlling authority, the rule Long seeks to invoke – officers have a constitutional obligation to intervene in the suppression and fabrication of evidence and the failure to collect and preserve evidence – must have been adopted by "a robust consensus of cases of persuasive authority" from other jurisdictions placing the rule "beyond debate." *Wesby*, 138 S. Ct. at 589-90.

Long did not and cannot show either because the case law she needs is nonexistent.

Before demonstrating the insufficiency of the cases

Long relied on below, qualified immunity is appropriate on

Long's after-the-fact failure to intervene claim because "[this

Court's] precedent does not clearly establish when an officer

has a 'realistic opportunity to intercede.'" *Penaloza v. City of

Rialto*, 836 F. App'x 547, 549 (9th Cir. 2020).[7] This goes to

the heart of the after-the-fact intervention theory Long

pursues.

Notwithstanding, Long did not rely on a Supreme

Court case because the Supreme Court has never addressed

failure to intervene liability under section 1983. Long did

cite cases from this Court, but none help her.

Long relied on *United States v. Koon*, 34 F.3d 1416 (9th

Cir. 1994), *rev'd on other grounds*, 518 U.S. 81 (1996),

*Cunningham*, 229 F.3d 1271, *Ramirez v. Butte-Silver Bow*

---

[7] Although not specifically raised below, this Court can consider the argument as an elaboration on the qualified immunity arguments made. *W. Watersheds Project v. United States DOI*, 677 F.3d 922, 925 (9th Cir. 2012); *Smith v. Arthur Andersen Ltd. Liab. P'ship*, 421 F.3d 989, 999 (9th Cir. 2005).

*Cty.*, 298 F.3d 1022, 1029 (9th Cir. 2002), and *Tobias*, 996

F.3d 571.[8]  ECF Doc. 85, pp. 28-29.  The Officers first

address *Koon*, *Cunningham,* and *Ramirez* because they

predate 2003, and then address *Tobais*.

*Koon* was a criminal case involving excessive force.  34

F.3d at 1424-26. In a footnote citing to *civil cases* from other

jurisdictions, this Court observed in dictum that "[p]ursuant

to a long line of civil cases, police officers have a duty to

intercede when their fellow officers violate the constitutional

rights of a suspect or other citizen." 34 F.3d at 1447 & n.25.

Notably, the cases cited involved intervening in excessive

force.  *Id.* (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d

Cir. 1988); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir.

1986); *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982);

---

[8] Long also relied on district court cases but "'"district court decisions - unlike those from the courts of appeals - do not necessarily settle constitutional standards or prevent repeated claims of qualified immunity.'"" *S.B.*, 864 F.3d at 1016 (quoting *Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016) (quoting *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011))).

*Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981); *Byrd v. Brishke*, 466 F.2d 6, 10-11 (7th Cir. 1972)).

In *Cunningham*, also an excessive force case, this Court quoted *Koon's* dicta observing "'police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen'" before finding no chance to intervene and no liability. 299 F.3d at 1289-90 (quoting *Koon*, 34 F.3d at 1447 n. 25).

*Ramirez*, a case about a search warrant, also quoted *Koon's* dicta before finding no failure to intervene liability because there was no Fourth Amendment violation. 298 F.3d at 1029-30.

Neither *Koon*, *Cunningham* nor *Ramirez* involved failing to intervene in constitutional violations for suppressing, fabricating, failing to collect, or failing to preserve evidence. Those constitutional violations are very different than force or search violations.

Thus, Long cited no controlling precedent existing in 2003 holding an officer must intervene in another's

suppression, fabrication, failure to collect, or failure to preserve evidence.  Neither *Koon*, *Cunningham* nor *Ramirez* "'squarely govern[] the specific facts at issue'" here.  *West*, 931 F.3d at 983 (quoting *City of Escondido v. Emmons*, 139 S. Ct. 500, 503-04 (2019)).

Because *Koon, Cunningham* and *Ramirez* are factually dissimilar from the constitutional violations Long pursues, Long (and the district court) were forced to rely on their broad and general statements that officers have "a duty to intercede when their fellow officers violate the constitutional rights of a suspect."

But a broad and general statement of constitutional law divorced from the facts of the case cannot demonstrate clearly established law.  *White*, 137 S. Ct. at 552; *Mullenix*, 577 U.S. at 11.  The "inquiry into whether a particular right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"  *Sabra*, 44 F.4th at 890; *see, e.g., Miller v. Gettel*, 2023 U.S. App. LEXIS 8997, at *35 (6th Cir. Apr. 14,

2023) (unpub.) (Larsen, C.J.., concurring) ("*Bunkley's* broad language gesturing toward other constitutional violations not at issue in that case cannot clearly establish that officers have a duty to intervene in any constitutional violation under any factual circumstances.  Instead, the clearly established 'inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition.""); *Harris v. Mahr*, 838 F. App'x 339, 342-43 (10th Cir. 2020) (finding qualified immunity for failure to intervene in unlawful entry and search because prior precedent stating "'that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence'" "fail[s] to show that the law was clearly established at the time of the incident" because it "recites a broad duty to intervene [] [and] lacks any specificity, especially as to unlawful entry and search cases").

*Tobias* also does not help Long.  The case addressed a coerced confession and repeated the generalized statement that "'police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.'" 966 F.3d at 583 (quoting *Cunningham*, 229 F.3d at 1289).  However, *Tobias* was decided in 2021, addressed 2013 conduct, and does not address the constitutional violations Long alleges.

In addition to not showing controlling precedent predating 2003 establishing the rule she seeks to invoke, Long also failed to show "a robust consensus of cases of persuasive authority" from other jurisdictions placing the duty to intervene in the constitutional violations she alleges "beyond debate."  *Wesby*, 138 S. Ct. at 589-90.

Neither *Gagnon v. Ball*, 696 F.2d 17 (2d Cir. 1982), *O'Neill*, 839 F.2d 9, *Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994), nor *Hurt v. Wise*, 880 F.3d 831 (7th Cir. 2018) help Long.  ECF Doc. 85, p. 29.

*Gagnon* was an arrest case. 696 F.2d at 21. *O'Neill* was a force case. 839 F.2d at 11. *Yang* was also a force case. 37 F.3d at 283-85. Thus, none involved failing to intervene in constitutional violations for suppressing, fabricating, failing to collect, or failing to preserve evidence.

Although *Hurt* involved constitutional claims occurring in 2012 like those Long alleges, it was decided in 2019. 880 F.3d at 835, 842-43. It is therefore irrelevant. *See Kisela*, 138 S. Ct. at 1154 ("*Glenn* ... was decided after the shooting at issue here. Thus, *Glenn* 'could not have given fair notice to [the officer]' because a reasonable officer is not required to foresee judicial decisions that do not yet exist ....").

Long's cited cases accordingly fall well short of a "consensus of persuasive authority" placing the issue "beyond debate." *Wesby*, 138 S. Ct. at 589-90.

This is particularly true because other jurisdictions hold failure to intervene liability outside of excessive force is not clearly established. *See, e.g.*, *Lozano v. New Jersey*, 9 F.4th 239, 246 n.4 (3d Cir. 2021) (observing failure to

intervene liability has not been extended outside of excessive force); *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) ("Assuming law enforcement officers have a constitutional duty to intervene outside of the excessive force context, such a duty was not clearly established in 2006.") (citing cases).

Moreover, courts hold no clearly established obligation exists to intervene in conduct like Long alleges.  *See, e.g., Bledsoe*, 53 F.4th at 617 (suppression and fabrication of evidence ); *Weimer*, 972 F.3d at 191-92 (unconstitutional police investigation); *Jones*, 174 F.3d at 1286 (fabricated evidence); *Onyiah v. City of Philadelphia*, 2023 U.S. Dist. LEXIS 40386, at *16 (E.D. Pa. Mar. 10, 2023) (coerced confession or malicious prosecution); *Thorpe v. City of Philadelphia*, 2020 U.S. Dist. LEXIS 158682, at *31 (E.D. Pa. Aug. 31, 2020) (fabrication and suppression of evidence).

In sum, Long failed to meet her burden below to show the law in 2003 clearly established failure to intervene liability for constitutional violations involving suppressing, fabricating, failing to collect, and failing to preserve

evidence. *See Sabra*, 44 F.4th at 887 (finding qualified immunity because "we have never held that *actions like the ones challenged in this case* constitute a violation of the Establishment Clause or Free Exercise clause.") (emphasis added).

### D. Qualified Immunity Bars Long's Civil Rights Conspiracy Claims Against The Officers

Long alleges the Officers "reached an agreement among themselves to frame [her] for a crime she did not commit" by suppressing, fabricating, failing to collect, and failing to preserve evidence, and each Officer "committed overt acts and were otherwise willful participants in joint activity." ER-58 ¶¶ 155, 156.

### 1. The Intracorporate Conspiracy Doctrine Bars Long's Claims

Under the intracorporate conspiracy doctrine, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar*, 582 U.S. at 153 (citing *Copperweld Corp v. Independence Tube Corp.*, 467 U. S. 752,

769-71 (1984)). This is because a "[c]onspiracy requires ... an agreement to do an unlawful act ... between or among two or more separate persons." *Id.* But "[w]hen two agents of the same legal entity make an agreement in the course of their official duties," "their acts are attributed to their principal" and there is no "agreement between one or more separate people." *Id.*

"Neither the Supreme Court nor the Ninth Circuit have decided whether the intracorporate conspiracy doctrine applies to civil rights actions ..." *Trujillo-Lopez v. City of Vallejo*, 2022 U.S. Dist. LEXIS 203467, at *9 (N.D. Cal. Nov. 8, 2022); *see also Rosenfeld v. Talamantes*, 2022 U.S. Dist. LEXIS 132566, at *15 (C.D. Cal. May 23, 2022) ("The Ninth Circuit has not yet decided whether the intracorporate conspiracy doctrine applies to civil rights actions ....").[9]

---

[9] The Supreme Court and this Court have held the intercorporate conspiracy doctrine's application to section 1985 conspiracy claims is not clearly established. *Ziglar,* 582 U.S. 153-54; *Manansingh v. United States*, 2023 U.S. App. LEXIS 7320, at *3 (9th Cir. Mar. 28, 2023) (unpub.); *Fazaga v. FBI*, 965 F.3d 1015, 1059-60 (9th Cir. 2020), *rev'd on other grounds*, 142 S. Ct. 1051 (2022)).

"Nonetheless, 'district courts within this Circuit …

consistently have held that [the doctrine] does apply.'"

*Rosenfeld*, 2022 U.S. Dist. LEXIS 132566, at *15-16 (quoting

*Hasbrouck v. Yavapai County*, 2021 U.S. Dist. LEXIS 18360,

at *43  (D. Ariz. Feb. 1, 2021); *Norton v. Arpaio*, 2015 U.S.

Dist. LEXIS 199451, at *17-18 (D. Ariz. Nov. 20, 2015)

(collecting cases); *Kroll v. County of Los Angeles*, 2021 U.S.

Dist. LEXIS 195693, at * 32 (C.D. Cal. June 28, 2021);

*Hoefer v. Fluor Daniel, Inc*., 92 F.Supp.2d 1055, 1059 (C.D.

Cal. 2000).

And most circuit courts considering the issue likewise

hold the intracorporate conspiracy doctrine bars civil rights

conspiracy claims.  *Fazaga*, 965 F.3d at 1060 n.41 ("Two

circuits have held that the intracorporate conspiracy

doctrine does not extend to civil rights cases. The majority of

the circuits have reached a contrary result.") (citing cases);

*Bowie v. Maddox*, 642 F.3d 1122, 1130 (D.C. Cir. 2011) ("At

least seven circuits have held the intracorporate conspiracy

doctrine applies to civil rights conspiracies.") (citing cases).

Although the decisions referenced in *Fazaga* and *Bowie* involved section 1985 conspiracies, two circuit courts squarely hold the intracorporate conspiracy doctrine also bars section 1983 conspiracy claims against members of the same police department.  And no circuit court holds otherwise.

Joining the Eleventh Circuit, the Sixth Circuit in *Jackson*, 925 F.3d 793, held the intracorporate conspiracy doctrine bars section 1983 conspiracy claims:

> [T]his circuit has never decided whether the intracorporate conspiracy doctrine also applies to suits under § 1983. [Citation] .... [W]e must resolve this issue of first impression. [¶].  We are aware of only one circuit, the Eleventh, that has squarely addressed the issue and has determined that the intracorporate conspiracy doctrine applies in § 1983 actions as in § 1985 actions. *See Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010); [citation]. By contrast, we are aware of no circuit that has applied the doctrine in § 1985 actions but declined to apply it in § 1983 actions. [fn]. [¶] We join the Eleventh Circuit and hold that the intracorporate conspiracy doctrine applies in § 1983 suits to bar conspiracy claims where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights.

*Id.* at 817-18.

*Jackson* reached this conclusion "because the considerations that support applying the intracorporate conspiracy doctrine in § 1985 suits pertain equally to the § 1983 context" and the court "discern[ed] no logical distinction upon which to treat § 1983 conspiracy claims differently."  925 F.3d at 818.  *Jackson* elaborated.

First, "the intracorporate conspiracy doctrine was recognized in antitrust and civil rights cases based on the legal notion of corporations as 'persons.'" *Id.* at 818 (citations omitted).  "When employees of a corporation act to further the purposes of that 'person,' principles from the law of agency dictate that those employees be treated not as separate 'persons' but as part of the same 'person.'" *Id.* at 818 (citations omitted).  "We have recognized the relevance of these principles to suits against employees of local government entities as well as against employees of private corporations.  Furthermore, the Supreme Court has made clear that municipalities are 'persons' for purposes of § 1983." *Id.* (citations omitted).

Second, "[b]ecause the intracorporate conspiracy doctrine follows from the legal definition of 'person,' which includes local governments, the doctrine has been developed to deal with the question whether there are two separate persons to form a conspiracy." *Id.* at 819. "The doctrine's application to other civil rights statutes has not been premised upon any factor unique to those statutes. We therefore see no reason to decline to apply the doctrine to § 1983." *Id.* "Section 1983 creates a cause of action against any 'person' who deprives a plaintiff of his rights, just like § 1985. Therefore, if § 1985 cannot be violated by an alleged conspiracy where the alleged conspirators are all employees of the same entity acting within the scope of their employment, neither can § 1983." *Id.*

Third, *Jackson* rejected "the rationale that because § 1985 is in its essence a conspiracy statute, while § 1983 is not, the intracorporate conspiracy doctrine applies to the former but not the latter." *Id.* "Although § 1983 does not expressly contemplate a cause of action for conspiracy, once

we have recognized such a cause of action—which we have,

[citation]—the question whether a conspiracy can exist

where all alleged conspirators work for the same entity, and

are alleged to have been acting in the scope of their

employment, naturally arises." *Id.* "That inquiry is

identical under § 1983 and § 1985. After all, we did not apply

the intracorporate conspiracy doctrine in § 1985 actions on a

theory that the text of that particular statutory provision

demanded it." *Id.* "Instead, we simply adopted a conspiracy

jurisprudence that developed outside the civil rights

context." *Id.*

Fourth, "we have recognized an exception to the

intracorporate conspiracy doctrine in § 1985(3) suits where

the defendants were alleged to have been acting outside the

scope of their employment, and we have indicated that the

exception would apply equally in the § 1983 context were we

to apply the doctrine in § 1983 suits." *Id.* (citations omitted).

"Accordingly, the intracorporate conspiracy doctrine applies to § 1983, and we assume that adopting the doctrine entails adopting the exception." *Id.*

*Jackson's* reasoning is sound. This Court should follow *Jackson* and join the Sixth and Eleventh Circuits in holding the intracorporate conspiracy doctrine precludes intracorporate conspiracy liability under section 1983 against members of the same police department.

Because the Officers are members of the City's police department acting within the course and scope of employment, ER-37 ¶ 12, the intracorporate liability doctrine bars Long's section 1983 civil rights conspiracy claim against the Officers. *Jackson*, 925 F.3d at 820 ("[A]s a matter of law, Stoiker cannot be liable for conspiracy in violation of § 1983 where he is alleged to have conspired with other employees of the same government entity, in the scope of their employment, to violate Plaintiffs' rights.").

Long's arguments below against application of the intracorporate conspiracy doctrine were unpersuasive.

Long argued "the Ninth Circuit has not applied the intracorporate conspiracy doctrine to § 1983 claims" so "it would be error to find that some cobbled-together version of the doctrine – derived originally from anti-trust law and now possibly applicable to § 1985 private conspiracies – applies to actions under § 1983." ECF Doc. 85, p. 24.

Long correctly says this Court has "not applied the intracorporate conspiracy doctrine to section 1983 claims," but that is only half the story. The other half is this Court has never addressed it.

Saying the intracorporate liability doctrine is "some cobbled-together version of the doctrine" "possibly applicable to section 1985" claims is a weak way of discounting the holdings of at least seven circuits.

Long also argued against the doctrine's application to section 1983 claims by citing cases from this Court recognizing section 1983 conspiracy claims against employees of the same government agency. ECF Doc. 85, p. 25.

But none of those cases addressed the intracorporate conspiracy doctrine. Cases do not stand for propositions not considered. *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985). Cases evaluating section 1983 conspiracy claims without analyzing the intracorporate conspiracy doctrine do not establish the doctrine's inapplicability to section 1983 claims. *Id.; Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938 (9th Cir. 2007) ("'unstated assumptions on non-litigated issues are not precedential holdings'"); *see, e.g., Torres v. City of St. Louis*, 39 F.4th 494, 507 (8th Cir. 2022) ("our opinions recognizing § 1983 conspiracy claims against police officers from the same department who conspired to violate clearly established rights do not address the applicability of the intracorporate conspiracy doctrine").

*Fazaga*, 965 F.3d 1015 well illustrates this point. Before *Fazaga*, this Court recognized section 1985 conspiracy claims involving employees of a government agency. *See, e.g., Thornton v. City of St. Helens*, 425 F.3d

1158, 1168 (9th Cir. 2005).  But this Court did not hold the intracorporate conspiracy doctrine inapplicable.  *Fazaga*, 965 F.3d at 1059-60; *see also Manansingh*, 2023 U.S. App. LEXIS 7320, at *3 (same).

## 2.  Long Failed To Meet Her Burden To Show Clearly Established Law

Because none exist, Long cited no Supreme Court or Ninth Circuit case holding the intracorporate conspiracy doctrine inapplicable to section 1983 conspiracy claims.  ECF Doc. 85, pp. 31-32.

Indeed, the Supreme Court has once addressed the intracorporate conspiracy doctrine's application to a civil rights claim and held the law regarding its application to section 1985 claims is not clearly established. *Ziglar*, 582 U.S. at 153-54.  This Court has subsequently twice held the same.  *Fazaga*, 965 F.3d at 1059-60 & n. 41; *Manansingh,* 2023 U.S. App. LEXIS 7320, at *3.

And Long could not and cannot rely on appellate authority from other jurisdictions to show the intracorporate conspiracy doctrine inapplicable to section 1983 conspiracy

claims. Again, the only two circuit courts answering the question hold it bars section 1983 claims. *Jackson*, 925 F.3d at 817-18; *Grider*, 618 F.3d at 1261.

If the applicability of the intracorporate conspiracy doctrine to a section 1985 claim is not clearly established – as the Supreme Court and this Court have held – despite the number of circuit courts holding the doctrine bars the claim, then surely the law is not clearly established regarding the doctrine's application to section 1983 claims where a smaller (albeit consistent) body of appellate court authority exists. *See Alicia St. v. Leyshock*, 41 F.4th 987, 990 (8th Cir. 2022) (holding qualified immunity appropriate because "neither the Supreme Court nor this court had 'definitively addressed the issue whether the doctrine applies to § 1983 conspiracy claims[ ]'" and "two other circuits had held that the doctrine does apply"); *Torres*, 39 F.4th at 507 (holding qualified immunity appropriate "because it is not clearly established that the intracorporate conspiracy doctrine does not apply to § 1983 conspiracy claims"); *Fatai v. City & Cnty. of*

*Honolulu*, 2021 U.S. Dist. LEXIS 130037, at *32 (D. Haw. July 13, 2021) ("The fact that so few Circuits—including the Ninth—have yet to rule on the issue demonstrates that, at a minimum, liability in the circumstances presented here— i.e., where officers of the same police department are alleged to have conspired to violate someone's constitutional rights— cannot lie because the law is not clearly established."); *Kroll*, 2021 U.S. Dist. LEXIS at *32 ("Although the existing cases have addressed conspiracy claims brought under section 1985 as opposed to section 1983, there is nothing in the opinions limiting the application of the doctrine to claims brought under that statute.  The Court therefore finds the law relating to conspiracies within an agency, such as the sheriff's department, is not clearly established, and Defendants are entitled to qualified immunity.").

**E.    Qualified Immunity Bars Long's Fourteenth And Fourth Amendment Claims Against Anderson, Newman, And Verdugo For Failing To Collect Or Preserve Evidence**

Long alleges Anderson, Newman, and Verdugo "purposefully failed to collect, or to cause to be collected,

evidence that they knew would detail who was present at the time of the murder with Conde, such as fingerprint impressions and/or DNA from: (1) the door and doorknob used by the perpetrator to gain access to the home; (2) the door and doorknob leading from the garage into the house which had been propped open during the assault; (3) the closet door in the master bedroom which contained a shotgun that Defendants knew had gone missing at the time of the murder; and (4) the kitchen cabinet which contained a change bowl associated with alternate suspect Bugarski that disappeared in connection with the murder." ER-49-50 ¶ 72. According to Long, this "denied [her] access to evidence that would have shown the presence and identity of others at the scene of the crime with Conde at the time of his death, and exonerated her." ER-50 ¶ 73. Long further alleges Anderson, Newman, and Verdugo "purposefully ... destroyed physical evidence including a champagne bottle and cup found at the house with Conde that, had it been tested, would have shown that other individuals had been present

with Conde at the time of the crime and identified them." ER-49 ¶ 69. According to Long, this was all done "because they could already tie their suspect, Long, to the scene of the crime based on her discovery of the body at her residence, and did not want to generate evidence that would call into question Long's guilt and implicate any additional suspects." ER-49 ¶ 71.

## 1. Long Fails To Plead Cognizable Claims

At bottom, Long claims Anderson, Newman, and Verdugo failed to collect or preserve evidence that, if tested, would have revealed others at the house and "exonerated" her. These claims fail.

The Constitution does not require officers to collect or preserve *any* item of evidence. *Miller*, 868 F.2d at 1119-20; *see Youngblood*, 488 U.S. at 58 (observing "our unwillingness to read the 'fundamental fairness' requirement of the Due Process Clause, [citation], as imposing on the police an undifferentiated and absolute duty to retain and to preserve

all material that might be of conceivable evidentiary

significance in a particular prosecution.").

Failing to collect or preserve evidence violates due

process *only* when an officer in bad faith fails to collect or

preserve what the officer knows at the time is exculpatory

evidence. *Youngblood*, 488 U.S. at 56-58; *Cunningham v.

City of Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003). "[I]n

the absence of bad faith, the police's failure to preserve

evidence that is only potentially exculpatory does not violate

due process, then a fortiori neither does the good faith

failure to collect such evidence violate due process." *Miller*,

868 F.2d at 1120; *United States v. Robertson*, 895 F.3d 1206,

1211 (9th Cir. 2018) ("[W]ithout knowledge of the potential

usefulness of the evidence, the evidence could not have been

destroyed in bad faith.").

Thus, uncollected or destroyed evidence "must both

possess an exculpatory value that was apparent before the

evidence was [not collected] or destroyed, and be of such a

nature that a defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984); *see Cooper v. Calderon*, 255 F.3d 1104, 1113 (9th Cir. 2001) ("The duty to preserve evidence is limited to material evidence, i.e., evidence whose exculpatory value was apparent before its destruction and that is of such nature that the defendant cannot obtain comparable evidence from other sources.").

As a further limitation on an obligation to collect and preserve evidence, "[t]he exculpatory value of an item of evidence is not 'apparent'" to an officer "when the evidence merely 'could have' exculpated the defendant." *United States v. Drake*, 543 F.3d 1080, 1090 (9th Cir. 2008) (quoting *Youngblood*, 488 U.S. at 56). "[T]hat the evidence may have proven exculpatory . . . does not render it per se material." *United States v. Martinez-Martinez*, 369 F.3d 1076, 1087 (9th Cir. 2004).

Thus, a viable failure to collect or preserve evidence claim requires Long to plausibly allege: (1) Anderson,

Newman, and Verdugo each failed to collect or preserve exculpatory evidence; (2) Anderson, Newman, and Verdugo each knew of the evidence's exculpatory value; and (3) she was unable to obtain comparable evidence.

Long's allegations are insufficient for many reasons.

First, Long does not distinguish between Anderson, Newman, and Verdugo. *Leer*, 844 F.2d at 634. It is not plausible that all three did or failed to do the exact same thing.

Second, if Long in anyway bases her claim on a failure to test evidence, "the police do not have a constitutional duty to perform any particular tests." *Youngblood*, 488 U.S. at 59; *see Moore v. City of Oakland*, 242 F. Supp. 3d 891, 902 (N.D. Cal. 2017) ("Plaintiff cites no authority establishing an obligation of the police to test DNA evidence ....").

Third, Long's assertion that the uncollected and destroyed evidence "would have exonerated" her if tested by "showing" others were at the crime scene is insufficient

speculation. *Iqbal*, 556 U.S. at 682. Long alleges no facts plausibly suggesting others were at the crime scene. Moreover, Long alleges no facts suggesting how the presence of others at the crime scene "would have exonerated her." Given she was at the crime scene, this is unsurprising. Just as Long would have it, one's presence at the crime scene does not necessarily mean that person committed the murder. And Long certainly could have committed the murder even if others had been present.

Fourth, it is impossible to say the evidence "would have exonerated" Long. This is because "the value of the untested evidence is speculative." *Cunningham*, 345 F.3d at 812. "It could have exonerated [Long], but it also could have incriminated [her]." *Id.* As such, "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant" does not violate the due process clause. *Youngblood*, 488 U.S. at 57; *Phillips v. Woodford*, 267 F.3d 966, 987 (9th Cir. 2001) ("'[E]vidence which could

have been subjected to tests which might have exonerated the defendant does not constitute a due process violation.'").

Fifth, Long alleges no facts implying Anderson, Newman, or Verdugo knew or should have known about the presence of someone other than Long at the crime scene. Presumably, the scene was processed right after the murder. Long alleges no facts plausibly suggesting that, at that time, Anderson, Newman, or Verdugo knew or should have known about the presence of others. The same is true regarding the bottle and cup because Long does not allege when they were destroyed.

Sixth, Long fails to allege "bad faith" by Anderson, Newman, or Verdugo. Bad faith means "official animus" or "a conscious effort to suppress exculpatory evidence." *Trombetta*, 467 U.S. at 488-89. To plead bad faith, Long must "'put forward specific, nonconclusory factual allegations that establish improper motive.'" *Cunningham*,

345 F.3d at 812. Long only alleges Anderson, Newman, and Verdugo did not want to develop evidence exonerating her. But she alleges no facts suggesting a plausible reason.

The lack of "specific, nonconclusory factual allegations" supporting even an inference that Anderson, Newman, or Verdugo knew they failed to collect or preserve exculpatory evidence renders Long's claim insufficiently pled. *Id.*

*Cunningham* is instructive. In *Cunningham,* the plaintiff alleged the officer "failed to gather any physical evidence, such as bed sheets or clothing, which could have exonerated [him]." 345 F.3d at 812. This Court found the allegation insufficient to plead bad faith "because the value of the untested evidence is speculative. It could have exonerated [plaintiff], but it also could have incriminated him. While [the officer's] investigative work may have been negligent or incomplete, it was not conducted in bad faith." *Id.* The Court concluded plaintiff had "not alleged specific,

nonconclusory facts showing [the officer] engaged in 'a conscious effort to suppress exculpatory evidence.'" *Id.* (quoting *Trombetta*, 467 U.S. at 488).

The same is true here. What Long alleges "can at worst be described as [a] negligent" or an "incomplete" investigation, neither of which violates due process. *Youngblood*, 488 U.S. at 58; *Cunningham*, 345 F.3d at 812; *see Richards v. County of San Bernardino*, 2022 U.S. App. LEXIS 17535, at *6 (9th Cir. June 24, 2022) (unpub.) ("Failing to follow guidelines or to carry out an investigation in a manner that will ensure an error-free result is one thing; failing to collect or preserve evidence in bad faith is quite another.").

And, finally, Long alleged no facts showing her inability to obtain comparable evidence. *Trombetta*, 467 U.S. at 489. Long does not allege an inability to access the crime scene to collect and test whatever fingerprint and DNA evidence she wanted. The omission is particularly poignant given the crime occurred in Long's home. Nor does Long

allege not having access to the bottle and cup before it was destroyed.

## 2. Long Failed To Meet Her Burden Of Showing Clearly Established Law

Although the Supreme Court in *Trombetta* and *Youngblood* held a bad faith failure to preserve evidence may violate due process, neither case dealt with collecting evidence. *See Miller*, 868 F.2d at 1119-20 (discussing *Trombetta* and *Youngblood*); *id.* at 1119 ("Miller has not cited a case, nor have we found one, which holds that the due process clause is violated when the police fail to gather potentially exculpatory evidence. On the contrary, the cases we discovered hold to the contrary.").)

The Supreme Court has never held failing to collect evidence could violate the due process clause, but this Court did in *Miller,* 868 F.2d at 1120. Thus, generally in 2003, a bad faith failure to collect or preserve exculpatory evidence might violate due process.

But the issue here is more specific than that general rule. *White*, 137 S. Ct. at 552. As this Court observed in the

context of a *Brady* claim, the qualified immunity question is not answered by the general constitutional rule that officers cannot suppress exculpatory evidence but whether clearly established law held *Brady* required disclosure of the evidence suppressed. *Carrillo v. County of Los Angeles*, 798 F.3d 1210, 1219, 1233 (9th Cir. 2015).

Thus, the issue is whether it was clearly established in 2003 that the Constitution required officers to collect all fingerprints and blood evidence at a crime scene and to preserve all evidence collected because it might be subject to tests that might exonerate a defendant.

Long did not meet her burden to show clearly established law.

Insufficient was Long's citation to *Youngblood, Miller, and United States v. Cooper*, 983 F.2d 928 (9th Cir. 1993) for the general proposition that bad faith failure to collect or preserve exculpatory evidence violates the due process clause. ECF Doc. 85, p. 27. Long cited no cases establishing any obligation to collect fingerprints or blood at a crime

scene.  Nor did she cite any case involving a failure to preserve evidence potentially showing involvement of someone else in a crime.

## F. Qualified Immunity Bars Long's Fourteenth And Fourth Amendment Claims Against Weeks and Glenn For Fabricating Evidence

Long alleges Weeks and Glenn manipulated, coerced, and fed information to witnesses to alter the "timeline" of witness observations the night of the murder, that Weeks coerced witness Jeff Dills into adopting a false timeline by threatening him with prosecution, and that Weeks coerced witness Oscar Castenda into providing an alibi for Sheana Lovejoy by telling him Long was pointing the finger at her. ER-46-49 ¶¶ 56-68.

## 1. Long Fails To Allege A Plausible Claim

One has a "constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." *Devereaux*, 263 F.3d at 1074-75.

A plaintiff must establish "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017); *see Black v. Montgomery County*, 835 F.3d 358, 372 (3d Cir. 2016) ("[T]here is a notable bar for evidence to be considered 'fabricated.'").

"Fundamentally, the plaintiff must first point to evidence [s]he contends the government deliberately fabricated." *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015). To the extent Long alleges the "timeline" was fabricated evidence, that does not suffice. A "timeline" is not evidence. A timeline is a representation in time of events put together from evidence. Based on Long's allegations, the witness testimony is the evidence at issue.

Deliberate fabrication of evidence can be shown directly or circumstantially. *Richards v. County of San Bernardino*, 39 F.4th 562, 569 (9th Cir. 2022).

Direct fabrication exists when an officer does the fabricating. *See, e.g., id.* at 570 (planting evidence); *McSherry v. City of Long Beach*, 423 F.3d 1015, 1022 (9th Cir. 2005) (false testimony at trial); *Spencer,* 857 F.3d at 789 (false statements in report); *Costanich v. Department of Soc. & Health Servs.*, 627 F.3d 1101, 1107 (9th Cir. 2010) (deliberately misstating witness statements in report).

Because Long does not allege any direct evidence fabrication by Weeks or Glenn, she must have plausibly alleged "circumstantial fabrication." She did not.

Circumstantial fabrication can be shown in two ways: (1) when an officer continues an investigation into a suspect when the officer knows or should know of the suspect's innocence; or (2) when an officer uses "investigative techniques that were so coercive and abusive that [he] knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076; *Spencer*, 857 F.3d at 799.

Long does not plausibly allege Weeks or Glenn interviewed any witnesses when either knew or should have known of her innocence. Indeed, Long never alleges when Weeks or Glenn conducted the interviews.

Long does allege Weeks and Glenn coerced witnesses into providing false testimony about when they heard or saw certain things on the night of the murder, but problems exist with her allegations.

Preliminarily, Long does not plausibly allege the witness testimony was fabricated. Testimony is not fabricated just because it did not assist Long's defense, was contradicted by other evidence, or was wrong. *See Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014) ("testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong").

Moreover, it is well established that overbearing, aggressive or coercive interviewing tactics – which is what Long alleges Weeks and Glenn engaged in – cannot alone establish deliberate fabrication of evidence. *Gausvik v.*

*Perez*, 345 F.3d 813, 817 (9th Cir. 2003); *Devereaux*, 263 F.3d at 1077.

As the Seventh Circuit aptly explained: "[C]oercive interrogation techniques [are] insufficient to find fabrication of evidence" because "[c]oerced testimony is not necessarily fabricated." *Coleman v. City of Peoria*, 925 F.3d 336, 346 (7th Cir. 2019); *see also Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017) ("We have indeed drawn a distinction between a coercion case for which there is no cognizable due process claim and an evidence fabrication case where there is a cognizable claim.") (simplified). "A reluctant witness or co-conspirator whose testimony an officer must pry out through aggressive interrogation techniques may be telling the truth despite the measures used. Fabricated testimony, meanwhile, is invariably false because it is made up by the officer, who knows he is making it up." *Coleman*, 925 F.3d at 346.

"'Coercively interrogating witnesses, paying witnesses for testimony, and witness-shopping may be deplorable, and

these tactics may contribute to wrongful convictions, but they do not necessarily add up to a constitutional violation even when their fruits are introduced at trial." *Id.* "Evidence collected with these kinds of suspect techniques, unlike falsified evidence and perjured testimony, may turn out to be true.'" *Id.*; *see also Caldwell v. City & County of San Francisco*, 889 F.3d 1105, 1120 (9th Cir. 2018) ("[W]hile paying a witness for testimony may create adverse incentives to provide false statements, paying a witness alone does not violate due process.").

Long failed to allege conduct by Weeks and Glenn showing "deliberate indifference to or reckless disregard" for her rights, *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013), because she failed to allege facts plausibly demonstrating "the interview techniques employed" by Weeks or Glenn "were so coercive and abusive" that Weeks or Glenn "knew or should have known that they would yield false information," *Devereaux*, 263 F.3d at 1077.

Regarding Glenn, Long does not plausibly allege any coercive or abusive conduct by him. ER-46-49 ¶¶ 56-68.

Regarding Weeks, Long alleges he coerced Casteneda by telling him Lovejoy needed an alibi. ER-46-47 ¶ 58. That is not coercive or abusive and cannot be equated with fabricating evidence. Asking for alibis to clear suspects is something investigators do every day.

Long further alleges Weeks coerced Dills by threatening him with prosecution. But that tactic is also commonplace whether Weeks believed Dills was a suspect or not, and thus cannot be so coercive or abusive that Weeks knew or should have known it would yield false information. *See United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004) ("Trickery [and] deceit ... do not render a confession inadmissible"); *Williams v. Woodford*, 384 F.3d 567, 594 (9th Cir. 2002) ("An interrogating agent's suggestion that a suspect's cooperation with the government will have a positive effect on the suspect's possible sentence is not an

improper inducement that causes the suspect's later testimony for the government to be involuntary.").

This Court requires much more than threat of prosecution to establish coercion. *See, e.g., Gantt*, 717 F.3d at 704, 708 (coercion shown when detectives interrogated eyewitness after "he had been awake for approximately two days straight on a crack binge" and "was still under the influence" when identifying suspects, threatened to charge him with murder if he did not identify the suspect, interrogated him on multiple days for hours at a time); *Williams*, 384 F.3d at 595 ("[T]he beatings, threatened murder charge, and offer of immunity in exchange for Coleman's testimony against Williams were coercive and rendered involuntary Coleman's statements incriminating Williams at the 1979 interrogation.")

Further, an issue was raised during Long's sentencing regarding Weeks coercing Dills' testimony. Long's attorney reviewed Dills' videotaped interviews and conceded the *absence* of coercion. ER-148-156.

Finally, Long cross-examined all witnesses at trial, including Weeks and Glenn and Dills and Lovejoy.[10]  ER-139-147 (listing witnesses).  Long thus had the opportunity to discredit the so-called "false timeline" and to show fabrication, or at the very least create a question on the issue.  *See Pennsylvania v. Ritchie*, 480 U.S. 39, 51-52 (1987) ("the right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable").  Effective cross-examination is a means to establish fabrication.  *See Hendricks v. Calderon*, 70 F.3d 1032, 1044 (9th Cir. 1995) ("the prosecution's devastating cross-examination may have left the jury with the impression that Hendricks' unfortunate history was all a fabrication").  Long's ability to cross-examine any witness establishes the absence of a due process violation.  *Williams*, 384 F.3d at 569.

---

[10] Dills died before trial, so his preliminary hearing testimony was read at trial.  *In re Long*, 10 Cal.5th at 771; ER-143.  Long cross-examined Dills during the preliminary hearing.  ER-72-125.

## 2. Long Failed To Meet Her Burden To Show Clearly Established Law

As a general proposition, it was clearly established in 2003 that bad faith fabrication of evidence violates the Constitution. *Devereaux*, 263 F.3d at 1074-75.

But this general constitutional principle is insufficient for the clearly established analysis. *Kisela*, 138 S. Ct. at 1153. Long must cite controlling precedent squarely govern[ing] the specific facts" of this case, such that it "placed the constitutionality of the officer's conduct 'beyond debate.'" *Id.; Wesby*, 138 S. Ct. at 589.

As already explained, Long never alleges Weeks or Glenn themselves fabricated evidence. Rather, Long's claim is that both coerced witnesses into testifying falsely. Long accordingly had to identify precedent existing in 2003 establishing what Weeks or Glenn did was so coercive or abusive that *all reasonable officers* would have known it could yield fabricated testimony. *Ventura*, 978 F.3d at 1091; *see Gill v. City of Milwaukee*, 850 F.3d 335, 341 (7th Cir. 2017) ("Whether interrogation tactics are unconstitutionally

coercive is an inquiry that depends on the specific facts and circumstances present in a particular case....  The right 'to be free from coercive interrogation' is highly generalized. Therefore, it cannot be the basis for defeating a qualified immunity defense, unless there is closely analogous precedent that is 'particularized' to the facts of the instant case.").

Regarding Glenn, Long cannot meet her burden because she never alleges what he did to any witness that was coercive.  Without knowing what Glenn did, it is impossible to conclude the unconstitutionality of Glenn's conduct was "beyond debate" in 2003.  *Wesby*, 138 S. Ct. at 589.

Regarding Weeks, Long must identify precedent existing in 2003 holding the threatening of witnesses with prosecution is so coercive or abusive that all reasonable officers would or should know it would yield false information.  She did not.

Long cited the following pre-2003 cases: *Pyle v. State*, 317 U.S. 213 (1942); *Napue v. Illinois*, 360 U.S. 264 (1959); and *Devereaux*, 263 F.3d 1070. ECF Doc. 83, p. 13. None help Long.

*Devereaux* does not help Long because the Court found "aggressive questioning of a child" changing the child's statement neither coercive nor abusive. 263 F.3d at 1076-77. *Pyle* does not help Long because it was a habeas case where the Supreme Court remanded the case for examination of petitioner's fabricated evidence claim without holding any interviewing technique improper. 317 U.S. at 214-16. *Napue* is likewise unhelpful because it involved a prosecutor's failure to correct known false witness testimony. 360 U.S. at 268-69.

## G. Qualified Immunity Bars Long's Fourteenth And Fourth Amendment Claims Against Anderson, Weeks, Newman, and Bloomfield For Suppressing Evidence

### 1. Long Fails To Allege A Plausible Claim

Under *Brady*, "suppression … of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or punishment." 373 U.S. at 87. *Giglio v. United States* extended *Brady* to impeachment evidence. 405 U.S. 150 (1972).

"The elements of a civil *Brady/Giglio* claim against a police officer are: (1) the officer suppressed evidence … favorable to the accused …, (2) the suppression harmed the accused, and (3) the officer 'acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors.'" *Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018) (citation omitted).

Suppressed evidence is only "favorable" when it is exculpatory or impeaching. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "To determine whether prejudice exists" from the suppression of "favorable" evidence, a court "look[s] to the materiality of the suppressed evidence." *Jackson v. Brown*, 513 F.3d 1057, 1071 (9th Cir. 2008).

"Evidence is material within the meaning of *Brady* when there is a reasonable probability that, had the evidence

been disclosed, the result of the proceeding would have been different." *Turner v. United States*, 137 S. Ct. 1885, 1893 (2017) (simplified).

"A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." *Turner*, 137 S. Ct. at 1893 (simplified); *Hooper v. Shinn*, 985 F.3d 594, 620 (9th Cir. 2021) ("A *Brady* violation occurs when the undisclosed favorable evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"). But "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976).

Deliberate indifference is a "conscious or reckless disregard of the consequence of one's acts or omissions." *Tatum v. Moody*, 768 F.3d 806, 821 (9th Cir. 2014). "It entails something more than negligence but is satisfied by

something less than acts or omissions for the very purpose of causing harm or without knowledge that harm will result." *Id.*

Long's claims against Anderson, Weeks, and Bloomfield fail for several reasons.

Long alleges Anderson, Weeks, and Bloomfield suppressed evidence indicating they thought witnesses were lying and "doubted their alibis." ER-43 ¶¶ 42, 46. Long also alleges Weeks suppressed that he "wouldn't be surprised if" one of the witnesses "was involved in the murder." ER-43 ¶43.

None of that is *Brady* material; it is neither exculpatory nor impeaching. Moreover, *Brady* does not require disclosing beliefs or opinions about witness credibility. *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006) (*Brady* does not require disclosing "strategies, legal theories, or impressions of the evidence.").

Even more, *Brady* does not require disclosure of inadmissible evidence unless it is impeachment evidence.

*United States v. Olsen*, 704 F.3d 1172, 1183-84 (9th Cir. 2013).  And an officer's opinion on witness credibility is not impeachment evidence and is inadmissible.  *United States v. Sanchez*, 176 F.3d 1214, 1220 (9th Cir. 1999).  Likewise inadmissible is an officer's speculation about a witness's possible involvement in a crime.  *See* Fed. R. Evid. 701.

Long further alleges Anderson and Weeks deprived her of impeachment evidence by suppressing Lovejoy's prior lies about vandalizing Conde's truck.  ER-43 ¶¶ 44, 45.

Long's allegation is provably false.  Long concedes Lovejoy admitted to the vandalism at trial. ER-43 ¶ 44; *see* ER-189-190.  And Lovejoy's prior lies to the police were not suppressed.  *In re Long*, 10 Cal.5th at 770 ("In a police interview, Lovejoy said she had a great relationship with Conde until the last six months, when he moved in with Long.  *Lovejoy admitted that she lied to the police* when they visited her house to investigate the vandalism of Conde's truck.") (emphasis added).

Ignoring all that, Lovejoy was impeached during trial. ER-199-209; *see also* ER-170-178. "Cumulative impeachment evidence is generally not material because the marginal effect of additional impeachment is relatively small and unlikely to result in a different outcome." *United States v. Emor*, 573 F.3d 778, 782 (D.C. Cir. 2009); *United States v. Vgeri*, 51 F.3d 876, 880 (9th Cir. 1995) (undisclosed impeachment evidence is immaterial and cumulative when the witness is already sufficiently impeached); *Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir. 1998) (same).

Even assuming suppression of Lovejoy's lies to police about vandalizing Conde's truck, the evidence is not material under *Brady*. *See United States v. Oruche*, 484 F.3d 590, 599 (D.C. Cir. 2007) (failure to disclose witness's admission she lied to police was not *Brady* violation because the witness was "thoroughly impeached" at trial). That additional piece of impeachment evidence certainly would not have resulted in Long's acquittal. *Vgeri*, 51 F.3d at 880 ("Withheld impeachment evidence must be material such

that 'if disclosed and used effectively … it may [have made] the difference between conviction and acquittal.'").

Long additionally alleges Weeks, Anderson, and Bloomfield suppressed differing versions of Bugarski's alibi thus precluding her from using "inconsistent early accounts of his alibi" to impeach Bugarski at trial. ER-44 ¶¶ 47-49. Long, however, alleges no facts regarding differing alibis. Just saying differing alibis exist without any factual support is insufficient. *Iqbal*, 556 U.S. at 678.

Long alleges Bloomfield, Newman, Anderson, and Weeks suppressed evidence of Lovejoy's interview prior to her polygraph that "would have showed that police knew Lovejoy's alibi was implausible, that she had the opportunity to commit the murder, and that she lacked credibility." ER-44 ¶ 50.

This allegation makes little sense given an officer's opinion about a witness's credibility or potential involvement in a crime is not material evidence under *Brady*. *Morris*, 447 F.3d at 742.

Assuming Long meant to allege she could have used Lovejoy's prior interview to impeach her, Long had the interview and used it to impeach Lovejoy at trial. ER-191-199.

Moreover, Long alleges no facts establishing prejudice from the suppressed evidence. That the evidence "might have helped … or might have affected the outcome of the trial" is insufficient. *Agurs*, 427 U.S. at 109-10.

Finally, Long makes no non-conclusory allegations suggesting Anderson, Weeks, or Bloomfield "'acted with deliberate indifference to or reckless disregard … in withholding evidence from prosecutors.'" *Mellen*, 900 F.3d at 1096.

## 2.  Long Failed To Meet Her Burden To Show Clearly Established Law

The issue is "whether the evidence allegedly withheld [in this] case was clearly established to be *Brady* evidence" such that "every reasonable police officer would have understood the specific evidence allegedly withheld was

clearly subject to *Brady's* disclosure requirements." *Carrillo*, 798 F.3d at 1219, 1223.

Long cited no precedent existing in 2003 holding *Brady* required disclosure of the evidence she alleges Anderson, Weeks, or Bloomfield suppressed.

Long cited these pre-2003 cases: *United States v. Bagley*, 473 U.S. 667 (1985); *Kyles v. Whitley*, 514 U.S. 419 (1995); *Strickler*, 527 U.S. 263; *United States v. Butler*, 567 F.2d 885 (9th Cir. 1978); and *Singh v. Prunty*, 14 F.3d 1157 (9th Cir. 1998). ECF Doc. 84, pp. 26-27.

*Bagley* involved failing to disclose witness payments. 473 U.S. at 671-72. *Kyles* involved prior statements from eyewitnesses impeaching their identification of the defendant. 473 U.S. at 441-54. *Strickler* involved documents created by an eyewitness, and notes from interviews with her where she conceded a poor memory. 527 U.S. at 266, 273-75. *Butler* involved promises to dismiss charges against a witness in exchange for favorable testimony. 567 F.2d at

886-88.  *Singh* involved favorable treatment to witnesses in unrelated criminal cases.  142 F.3d at 1159 & n.3, 1161-62.

None of these cases defeat qualified immunity because none deal with the "specific evidence allegedly withheld" by Anderson, Weeks, or Bloomfield.  *Carrillo*, 798 F.3d at 1223. Neither payments, favorable treatment nor eyewitness identification are at issue here.

Long cited two post-2003 cases: *Carrillo* and *Tennison v. City & County of San Francisco*, 570 F.3d 1078 (9th Cir. 2009). ECF Doc. 84, pp. 26-27.  Neither help her.

Decided in 2015, *Carrillo* discussed the state of the law in 1984 and 1991 and found it clearly established in 1984 and 1991 that *Brady* required disclosing evidence undermining eyewitness identification of a defendant.  798 F.3d at 1226-28.  *Carrillo* also found it clearly established in 1984 that *Brady* required disclosing evidence that "another man who resembled the eyewitness's description of the killer had previously tried to kill the victim."  *Id.* at 1226.  Again, eyewitness identification evidence is not at issue here.

*Tennison* decided in 2009, involved suppressing a confession. 570 F.3d at 1093-94. No confession is at issue here.

## CONCLUSION

This district court erred in denying the Officers qualified immunity. This Court should reverse.

Respectfully Submitted,

Dated: May 30, 2003        Dean Gazzo Roistacher LLP


By: */s/ Lee H. Roistacher*
Lee H. Roistacher
Mitchell D. Dean
Attorneys for
Defendants/Appellants
Thomas Weeks; Ronald
Anderson; Daniel
Bloomfield; Robert
Newman; Daniel Verdugo;
Jeffrey Glenn

## CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. 32(A)(7)(C) AND CIRCUIT RULE 32-1 FOR CASE NO. 23-55004

Pursuant to Federal Rule of Appellate Procedure 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that Appellants' Opening Brief is proportionately spaced, has a typeface of 14 points or more and contains 13,776 words.

Dated: May 30, 2003     Dean Gazzo Roistacher LLP


By:  */s/ Lee H. Roistacher*
Lee H. Roistacher
Mitchell D. Dean
Attorneys for
Defendants/Appellants
Thomas Weeks; Ronald
Anderson; Daniel
Bloomfield; Robert
Newman; Daniel Verdugo;
Jeffrey Glenn

## STATEMENT OF RELATED CASES UNDER NINTH CIRCUIT RULE 28-2.6

Defendants/Appellants Thomas Weeks; Ronald Anderson; Daniel Bloomfield; Robert Newman; Daniel Verdugo; Jeffrey Glenn are not aware of any related case currently pending in the Ninth Circuit Court of Appeals.

Dated: May 30, 2003          Dean Gazzo Roistacher LLP

By: */s/ Lee H. Roistacher*
Lee H. Roistacher
Mitchell D. Dean
Attorneys for
Defendants/Appellants
Thomas Weeks; Ronald
Anderson; Daniel
Bloomfield; Robert
Newman; Daniel Verdugo;
Jeffrey Glenn

## CERTIFICATE OF SERVICE

Re:   *Kimberly Long v. Thomas Weeks, et al.*
        United States Court of Appeals for the Ninth Circuit
        Case No. 23-55004
        USDC Case No. 5:21-cv-02008-FWS-E

        I, Maria E. Kilcrease, declare:

        That I am and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to the action; and I am employed in the County of San Diego, California. My business address is 440 Stevens Avenue, Suite 100, Solana Beach, California 92075 and my electronic address is mkilcrease@deangazzo.com.

        On May 30, 2023, I served the following documents described as:

### APPELLANTS' OPENING BRIEF

on all interested parties in this action addressed as follows:

> Lauren Carbajal
> Megan Pierce
> Steven Art,
> Loevy & Loevy
> 311 N. Aberdeen St., 3rd Fl.
> Chicago, IL 60607
> Tel: (312) 243-5900
> E-mail: carbajal@loevy.com
>            steve@loevy.com

Elizabeth Wang
Loevy & Loevy
2060 Broadway, Ste. 460
Boulder, CO 80302
Tel: (720) 328-5642
E-mail: elizabethw@loevy.com

Michael D. Seplow
Paul Hoffman
Schonbrun Seplow Harris
Hoffman & Zeldes LLP
9415 Culver Boulevard, #115
Culver City, CA 90232
Tel: (310) 396-0731
E-mail: mseplow@sshhzlaw.com
         hoffpaul@aol.com

Jan Stiglitz
Law Office of Jan Stiglitz
14462 Garden Tr.
San Diego, CA 92127
Tel: (619) 807-5890
E-mail: js@cwsl.edu

**Attorneys for Appellee**

John D. Higginbotham
Neil D. Okazaki
Dean Derleth, City Attorney
City Attorney's Office
City of Corona
400 S. Vicentia Ave., 3rd Floor
Corona, CA 92882
Tel,: (951) 279-3506
E-mail: john.higginbotham@coronaca.gov
         neil.okazaki@coronaca.gov

**Attorneys for Appellants, City of Corona, Thomas Weeks, Ronald Anderson, Daniel Bloomfield, Robert Newman, Daniel Verdugo and Jeffrey Glenn**

X       BY ELECTRONIC SERVICE: On the date stated above, I served the documents described above on designated recipients via CM/ECF.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 30, 2023, at Solana Beach, California.

*Maria E. Kilcrease*
_____
Maria E. Kilcrease, declarant