No. 23-55004

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

———————————————

KIMBERLY LONG,

*Plaintiff-Appellee*,

*v.*

THOMAS WEEKS, *et al.*,

*Defendants-Appellants*.

———————————————

Appeal from the United States District Court
for the Central District of California
Case No. 5:21-cv-02008-FWS-E

---

**ANSWERING BRIEF OF PLAINTIFF-APPELLEE KIMBERLY LONG**

---

Jon Loevy
Steve Art*
Lauren Carbajal
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
steve@loevy.com

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway St.
Boulder, CO 80302
(720) 328-5642
elizabethw@loevy.com

Jan Stiglitz
LAW OFFICE OF
JAN STIGLITZ
14462 Garden Tr.
San Diego, CA 92127
(619) 807-5890

*Counsel of Record*

**August 28, 2023**

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................... i

TABLE OF AUTHORITIES ............................................................................... iii

JURISDICTIONAL STATEMENT ....................................................................1

ISSUES PRESENTED ..........................................................................................5

STATEMENT OF THE CASE ............................................................................5

   I.   OSWALDO CONDE IS MURDERED .....................................................5

   II.  THE BLOODY CRIME SCENE .............................................................6

   III. LONG IS INNOCENT .............................................................................6

   IV. LEADS POINT TO ALTERNATIVE SUSPECTS .......................................6

   V.  THE DEFENDANT OFFICERS FRAME LONG ...........................................7

      A.    Defendants Suppress a Report Documenting Their Discovery of Physical Evidence at the Scene that Establishes Long's Innocence ..................8

      B.    Defendants Suppress Evidence about Lovejoy and Bugarski ...............10

         1. Suppressed Reports Identifying Alternative Suspects and Questioning Their Credibility ...............................................................................10

         2. Suppressed Evidence about Bugarski's Alibi ...........................................11

         3. Suppressed Evidence About Lovejoy's Alibi ...........................................12

      C.    Defendants Fabricate Witness Statements Implicating Long and Suppress Information about How They Obtained those Statements ...............12

         1. Fabricated Timeline for Long's Alibi Witness Jeff Dills ...........................12

         2. Fabricated Timeline for Lovejoy's Alibi Witness Oscar Castaneda .........14

         3. Fabricated Timeline for Linda Alexander ...................................................14

      D.    Defendants Destroy and Suppress Physical Evidence...........................15

   VI. LONG'S WRONGFUL CONVICTION .........................................................16

   VII.LONG FIGHTS FOR HER FREEDOM AND IS EXONERATED.............17

SUMMARY OF THE ARGUMENT ................................................................18

# TABLE OF CONTENTS

ARGUMENT ........................................................................................21

I. THIS COURT SHOULD DISMISS DEFENDANTS' FACT-BASED CHALLENGES FOR LACK OF JURSIDICTION ............................21

    A. The Jurisdictional Limits of Qualified-Immunity Appeals ....................22

    B. Stipulating to Plaintiff's Version of the Facts ........................................23

    C. Appellants Present Factual Challenges, Not Legal Issues......................25

        1. Defendants Ignore Allegations in the Complaint ......................................25

        2. Defendants Contest Allegations in the Complaint ..................................26

        3. Defendants Use Outside Evidence to Contradict the Complaint .............28

    D. This Court Should Dismiss..................................................................29

II. THIS COURT SHOULD DISMISS THE APPEAL AS MOOT ..............30

III. DEFENDANTS HAVE FORFEITED THEIR IMMUNITY ARGUMENTS AT THIS STAGE ........................................................32

IV. ACCEPTING LONG'S ALLEGATIONS AS TRUE, THE COMPLAINT PLAUSIBLY PLEADS CLEARLY ESTABLISHED CONSTITUTIONAL VIOLATIONS ...................................................................................35

    A. This Court Cannot Rely on Materials Outside of the Complaint...........35

    B. Long Plausibly Pleads Clearly Established Constitutional Claims ........37

        1. Fabrication of Evidence Is Plausibly Alleged and Clearly Established ....38

        2. Suppression of Evidence Is Plausibly Alleged and Clearly Established...44

        3. Destruction of Evidence Is Plausibly Alleged and Clearly Established ...51

        4. Malicious Prosecution Is Plausibly Alleged and Clearly Established.......53

        5. Conspiracy Is Plausibly Alleged and Clearly Established ........................53

        6. Failure to Intervene Is Plausibly Alleged and Clearly Established...........57

    C. Defendants' Argument Critiquing the District Court Lacks Merit ........58

CONCLUSION ....................................................................................59

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

Adams v. Speers, 473 F.3d 989 (9th Cir. 2007) ..................................................23

Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) ...........................................54

Advanced Bldg. & Fabrication, Inc. v. California Highway Patrol, 918
   F.3d 654, 657 (9th Cir. 2019) .....................................................................25

Arizona v. Youngblood, 488 U.S. 51 (1988).......................................................51

Armendariz v. Penman, 75 F.3d 1311 (9th Cir. 1996) .......................................22

Armstrong v. Daily, 786 F.3d 529 (7th Cir. 2015)..............................................55

Ashcroft v. Iqbal 556 U.S. 662 (2009) .........................................................24, 29

Avery v. Milwaukee, 847 F.3d 433 (7th Cir. 2017)......................................43, 47

Bailey v. Rae, 339 F.3d 1107 (9th Cir. 2003) ....................................................48

Baldwin v. Placer Cnty., 418 F.3d 966 (9th Cir. 2005) ....................................56

Banks v. Dretke, 540 U.S. 668 (2004) ...............................................................40

Behrens v. Pelletier, 516 U.S. 299 (1996)....................................................23, 30

Bradford v. Scherschligt, 803 F.3d 382 (9th Cir. 2015).......................38, 41, 43

Caldwell v. City & Cnty. of San Francisco, 889 F.3d 1105 (9th Cir.
   2018) .............................................................................................................40

California v. Azar, 911 F.3d 558 (9th Cir. 2018).....................................*passim*

Cameron v. Craig, 713 F.3d 1012 (9th Cir. 2013) ...........................................56

Carrillo v. Los Angeles, 798 F.3d 1210 (9th Cir. 2015) ......................47, 48, 49

Cohen v. Beneficial Loan Corp., 337 U.S. 542 (1949) ....................................22

Coinbase, Inc. v. Bielski, 143 S. Ct. 1915 (2023) .............................................30

Conner v. Heiman, 672 F.3d 1126 (9th Cir. 2012).............................................54

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101 (9th Cir. 2010) ...................................................................................42

Crowe v. Oregon State Bar, 989 F.3d 714 (9th Cir. 2021) ....................................5

Cunningham v. Gates, 229 F.3d 1271 (9th Cir. 2000) .........................................57

Cunningham v. Wenatchee, 345 F.3d 802 (9th Cir. 2003).................................53

David v. Kaulukukui, 38 F.4th 792 (9th Cir. 2022) ................................20, 34, 37

Denby v. Engstrom, No. 20-16319, 2021 WL 2885846 (9th Cir. July 9, 2021) ...................................................................................58

Devereaux v. Abbey, 263 F.3d 1070 (9th Cir. 2001) ....................................38, 40

Dupree v. Younger, 143 S. Ct. 1382 (2023) ........................................................21

E.J.T. v. Jefferson, No. 21-35615, 2021 WL 5238200 (9th Cir. Oct. 12, 2021) ...................................................................................30

Eberle v. City of Anaheim, 901 F.2d 814 (9th Cir. 1990)......................33, 36, 54

Empress LLC v. San Francisco, 419 F.3d 1052 (9th Cir. 2005) ........................43

Estate of Anderson v. Marsh, 985 F.3d 726 (9th Cir. 2021) ..............................24

F.B.I. v. Fazaga, 142 S. Ct. 1051 (2022) ............................................................56

Falck N. California Corp. v. Scott Griffith Collaborative Sols., 25 F.4th 763 (9th Cir. 2022) ............................................................31, 32

Fazaga v. F.B.I., 965 F.3d 1015 (9th Cir. 2020)................................................56

Foster v. City of Indio, 908 F.3d 1204 (9th Cir. 2018)..................................21, 25

Franklin v. Fox, 312 F.3d 423 (9th. Cir. 2002)..................................................54

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002) ...................53

Gantt v. City of Los Angeles, 717 F.3d 702, 708 (9th Cir. 2013)................42, 50

Giglio v. U.S., 405 U.S. 150 (1972) ....................................................................49

Gilbrook v. City of Westminster, 177 F.3d 839 (9th Cir. 1999) ........................56

Hernandez v. City of San Jose, 897 F.3d 1125 (9th Cir. 2018)...........................21

In re Long, 10 Cal.5th 764, 771-72 (Cal. St. Ct. 2020) .................................17, 18

In re Roberts Farms, Inc., 652 F.2d 793 (9th Cir. 1981) ....................................30

Jackson v. City of Cleveland, 925 F.3d 793 (6th Cir. 2019) ..............................56

Japanese Village v. Fed. Transit Admin., 843 F.3d 445 (9th Cir. 2016)............35

Johnson v. Jones, 515 U.S. 304 (1995) ........................................................23, 24

Jones v. Clark, 630 F.3d 677 (7th Cir. 2011).....................................................22

Karunyan v. U.S., 578 F. App'x 708 (9th Cir. 2014) .........................................51

Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988 (9th Cir. 2018)................36

Kyles v. Whitley, 514 U.S. 419 (1995) .........................................................44, 48

Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012) ..............................31, 54

Lee v. Los Angeles, 250 F.3d 668 (9th Cir. 2001) .............................................36

Long v. Johnson, 736 F.3d 891 (9th Cir. 2013).................................................18

Mack v. South Bay Beer Distribution, 798 F.2d 1279 (9th Cir. 1986) ..............36

Mellen v. Winn, 900 F.3d 1085 (9th Cir. 2018)..........................................passim

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

Miller v. Vasquez, 868 F.2d 1116 (9th Cir. 1989)..........................................51, 53

Mitchell v. Forsyth, 472 U.S. 511 (1985)........................................................22, 34

Monell v. Department of Soc. Servs., 436 U.S. 658 (1978)..........................1, 2, 3

Moore v. Gerstein, 107 F.3d 16 (9th Cir. 1996) ...............................................37

Napue v. Illinois, 360 U.S. 264 (1959)...............................................................40

O'Brien v. Welty, 818 F.3d 920 (9th Cir. 2016) ................................................37

Pauluk v. Savage, 836 F.3d 1117 (9th Cir. 2016)..............................................21

Peck v. Montoya, 51 F.4th 877 (9th Cir. 2022).......................................24, 25, 30

Penaloza v. City of Rialto, 836 F. App'x 547 (9th Cir. 2020) ...........................58

Polanco v. Diaz, No. 22-15496, 2023 WL 5008202 (9th Cir. Aug. 7, 2023) ..............................................................................................................35

Pyle v. Kansas, 317 U.S. 213 (1942) .................................................................40

Ramirez v. Butte-Silver Bow Cty., 298 F.3d 1022 (9th Cir. 2002)....................58

Reed v. Hammond, No. 22-35355, 2023 WL 4542017 (9th Cir. July 14, 2023) .........................................................................................................23, 24

Robins v. Meecham, 60 F.3d 1436 (9th Cir. 1995) ...........................................58

Rodarte v. Gutierrez, No. 21-35973, 2023 WL 109723 (9th Cir. Jan. 5, 2023) .............................................................................................................40

Rodriguez v. Los Angeles, 891 F.3d 776 (9th Cir. 2018) ....................................3

Sandoval v. San Diego, 985 F.3d 657 (9th Cir. 2021)..................................37, 54

Skinner v. Switzer, 562 U.S. 521 (2011) ............................................................34

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

Spencer v. Peters, 857 F.3d 789 (9th Cir. 2017)..............................41, 42

Strand v. Minchuk, 910 F.3d 909 (7th Cir. 2018) ...............................24

Taylor v. Riojas, 141 S. Ct. 52 (2020)..................................................37

Tennison v. San Francisco, 570 F.3d 1078 (9th Cir. 2009) ...................48, 49, 50

Thompson v. Clark, 142 S. Ct. 1332 (2022).........................................53

Tobias v. Artega, 996 F.3d 571 (9th Cir. 2021).....................................58

Tolan v. Cotton, 572 U.S. 650 (2014) .............................................37, 38

TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021) .........................32

United States v. Bagley, 473 U.S. 667 (1985).....................................49

United States v. Decinces, 808 F.3d 785 (9th Cir. 2015) ....................21

United States v. Koon, 34 F.3d 1416 (9th Cir.1994)...........................57

United States v. Zaragoza-Moreira, 780 F.3d 971 (9th Cir. 2015)......51

Voskanyan v. Upchurch, No. 21-55333, 2022 WL 4181664 (9th Cir. Sept. 13, 2022)...........................................................................24

Wearry v. Cain, 577 U.S. 385 (2016) .............................................44, 45, 50

Wong v. U.S., 373 F.3d 952 (9th Cir. 2004) .......................................37

Zaragosa-Solis v. Gutierrez, No. 23-15306, 2023 WL 5380302 (9th Cir. Aug. 22, 2023) ..........................................................................31, 32

Ziglar v. Abbasi, 137 S. Ct. 1843 (2017)............................................56

## TABLE OF AUTHORITIES

**Statutes and Rules**                                                **Page(s)**

28 U.S.C. §1331.................................................................................2

28 U.S.C. §1367(a) ...........................................................................2

28 U.S.C. §1291.....................................................................4, 21, 22

42 U.S.C. §1983..........................................................................*passim*

42 U.S.C. §1985................................................................................56

Fed. R. Evid. 201 ............................................................................36

# JURISDICTIONAL STATEMENT

Defendants-Appellants' jurisdictional statement is incorrect. OB at 19-20. This Court lacks jurisdiction.

In November 2020, Plaintiff-Appellee Kimberly Long was exonerated when the California Supreme Court set aside her wrongful conviction for the murder of her partner, Oswaldo Conde. ER-52-53 ¶¶91-93. State prosecutors dropped all charges in April 2021. *Id.*

Long filed suit on November 30, 2021, alleging the City of Corona and six of its police officers—Thomas Weeks, Ronald Anderson, Daniel Bloomfield, Robert Newman, Daniel Verdugo, and Jeffrey Glenn (the "Defendant Officers")—committed investigative misconduct that caused Long's wrongful conviction. Dkt. 1. After the district court dismissed without prejudice and with leave to replead, Dkt. 57, Long filed a First Amended Complaint on May 18, 2022, alleging additional facts, ER-33-70 (the "Complaint").

The Complaint asserts claims under 42 U.S.C. §1983 that the Defendant Officers violated Long's right to due process by fabricating, suppressing, and destroying evidence (Count I), maliciously prosecuted and illegally detained her without probable cause (Count II), failed to intervene to prevent violations of her rights (Count III), and conspired to violate her rights (Count IV). ER-53-70. Long also asserts that the City's policies caused the constitutional violations, *Monell v.*

*Department of Soc. Servs.*, 436 U.S. 658 (1978) (Count V). ER-53-70. Finally, she alleges that the Defendants' misconduct violated California law, asserting state-law claims for malicious prosecution (Count VI), intentional infliction of emotional distress (Count VII), conspiracy (Count VIII), *respondeat superior* (Count IX), violations of the Bane Act (Count X), and indemnification (Count XI). *Id.* The district court has jurisdiction over the federal claims under 28 U.S.C. §1331 and exercised supplemental jurisdiction over the state-law claims under 28 U.S.C. §1367(a).

On June 22, 2022, the Defendants filed four motions to dismiss, asserting that Long failed to state a claim. SER-54-86 (Newman and Verdugo); SER-87-114 (Weeks, Anderson, and Bloomfield); SER-115-137 (Glenn); SER-138-168 (City). The Defendants did not accept Long's pleadings as true, and they sought dismissal by mischaracterizing and omitting allegations in the Complaint, contesting the facts, and requesting that the district court draw inferences for them. *Id.* They even filed a "request for judicial notice," asking the court to consider hundreds of pages of documents from Long's state criminal case, to accept their view of the facts based on those documents, and to dismiss the Complaint on that basis. SER-49-53.

On December 27, 2022, the district court denied the motions to dismiss, with four exceptions: it dismissed the state-law claims for malicious prosecution, *respondeat superior*, and indemnification with prejudice, and it dismissed her

*Monell* claim without prejudice and with leave to replead by January 26, 2023. ER-26. The district court granted in part and denied in part the request for judicial notice, holding it would take notice only of the fact that the judicial records existed, but not the truth of any fact in the records. ER-11-12.

On January 4, 2023, the Defendant Officers filed a notice of appeal from the December 27, 2022 order denying their motions to dismiss Long's §1983 claims. ER-28-29. Claims against the City and state-law claims were not appealed. *Id.*

On January 23, 2023, the Defendants moved to stay proceedings in the district court. Dkt. 106. On January 24, 2023, Long moved to certify Defendants' appeal as frivolous, arguing that it was based on disputes of fact beyond this Court's jurisdiction. Dkt. 107; *Rodriguez v. Los Angeles*, 891 F.3d 776, 791 (9th Cir. 2018).

On January 26, 2023, Long filed her Second Amended Complaint, adding allegations in support of her Fourth Amendment and *Monell* claims. SER-3-48. On February 9, 2023, the Defendants again moved to dismiss, challenging Long's *Monell* allegations but not the allegations against the Defendant Officers. Dkts. 112-1, 119 & 120.

On February 21, 2023, Long moved in this Court to dismiss this appeal as moot, given the Second Amended Complaint and the new motion to dismiss. App. Dkt. 12.

On March 16, 2023, the district court denied Long's motion to certify the appeal as frivolous and stayed proceedings pending this appeal. Dkt. 121.

On March 29, 2023, this Court denied Long's motion to dismiss the appeal, without prejudice to Long raising jurisdictional arguments here. App. Dkt. 15.

Defendants contend this Court has jurisdiction to consider their challenges to Long's §1983 claims under 28 U.S.C. §1291, invoking the collateral-order doctrine. They assert without analysis that the district court's order denying their motions to dismiss is immediately appealable. OB-19-20. As explained in Argument I, *infra*, this Court lacks jurisdiction to consider the fact-based challenges Defendants raise on appeal, and it should dismiss for lack of jurisdiction.

# ISSUES PRESENTED

1.      Whether the Defendants' factual challenges to Long's Complaint deprive this Court of appellate jurisdiction such that the appeal should be dismissed.

2.      Whether the appeal should be dismissed because it is moot, given the filing of Long's Second Amended Complaint.

3.      Whether, assuming this Court could exercise jurisdiction, the Defendant Officers have forfeited and waived their claims of qualified immunity at this stage of the case.

4.      Whether, assuming this Court could exercise jurisdiction, the Complaint plausibly pleads against each of the Defendant Officers firmly established constitutional claims for suppression, fabrication, and destruction of evidence, conspiracy, and failure to intervene.

# STATEMENT OF THE CASE

These facts are from Long's Complaint, ER-33-70, which this Court takes as true, drawing all inferences for Long. *Crowe v. Oregon State Bar*, 989 F.3d 714, 724 (9th Cir. 2021).

## I.      OSWALDO CONDE IS MURDERED

At some point on the night of October 5 or early morning of October 6, 2003, someone brutally murdered Long's partner Oswaldo Conde in the home they shared in Corona, California. ER-40 ¶22. Long was out with a man named Jeff

Dills at the time of the crime. ER-40 ¶24, ER-47 ¶60. She returned home to find

Conde severely beaten, with injuries to his head, lying motionless on the living

room couch, surrounded by blood. ER-40 ¶¶24, 26. Long immediately called 911,

placing the call at 2:09 a.m. ER-40 ¶¶24, ER-47 ¶63.

## II.    THE BLOODY CRIME SCENE

At the scene, there was blood splatter on every surface of the living room in

all directions around Conde's body. ER-40-41 ¶¶26-28, ER-45 ¶¶52-54, ER-54

¶99. It was impossible that the perpetrator could have remained blood-free during

the crime. *Id.* Yet there was no blood on Long's clothes at the scene or when she

submitted to police questioning that night. *Id.* The Defendants found no evidence

Long had attempted to clean herself in the sinks or showers of her home. *Id.*

## III.    LONG IS INNOCENT

Long is innocent. ER-3 ¶¶8-9. She voluntarily assisted in the police

investigation. ER-41 ¶¶29-32. She had no motive to commit the crime. ER-42 ¶39.

No forensic or physical evidence implicated her—in fact, it conclusively excluded

her. ER-36 ¶8, ER-51 ¶¶82-84. Moreover, no witness nor family member

suggested Long as a suspect during the initial interviews and canvass of the

neighborhood. ER-42 ¶38.

## IV.    LEADS POINT TO ALTERNATIVE SUSPECTS

Defendants investigated at least two alternative suspects. The first was

Conde's ex-girlfriend Shiana Lovejoy. ER-41 ¶33-36. Defendants learned that

Lovejoy was violent and had recently threatened to kill Conde and Long. *Id.* The second was Long's ex-husband, Joe Bugarski. ER-42 ¶37. He, too, had a recent history of threatening Conde and Long. *Id.* Defendants had ample reason to suspect Lovejoy or Bugarski, and no reason to suspect Long. ER-42-44 ¶¶40-50.

## V.     THE DEFENDANT OFFICERS FRAME LONG

Nonetheless, despite these alternative suspects and the strong evidence of Long's innocence, the Defendant Officers focused on Long, with the goal of implicating her. ER-35-36 ¶¶4-10, ER-42-50 ¶¶40-76. Weeks was the detective sergeant in charge of the homicide unit. ER-37 ¶¶13-14. He led and participated in all aspects of the investigation, responded to the scene, led witness interviews, and determined investigative steps. *Id.* Anderson led the investigation with Weeks and supervised other Defendants as the senior detective. ER-38 ¶15. Bloomfield and Newman were detectives assigned to the case, who interviewed suspects and witnesses, responded to the scene, and collected evidence. ER-38 ¶¶16-18. Verdugo was an evidence technician who processed evidence. ER-39 ¶20. Glenn was an officer who searched the scene and conducted a canvass, interviewing neighborhood witnesses. ER-38 ¶19.

Although Weeks and Anderson led the investigation, the Defendant Officers worked as one, small investigative team, each committing acts of misconduct, together, in small groups, and alone. ER-35-38 ¶¶4-20, ER-42 ¶40, ER-44 ¶¶48-49,

ER-47-48 ¶¶60-65, ER-50 ¶76, ER-58-59 ¶¶120-127, ER-66 ¶155. They conspired with one another and with others—including Bugarski, Lovejoy, and Dills—to suppress, fabricate, and destroy evidence, with the goal of exonerating alternative suspects and falsely pinning the crime on Long. *Id.* Throughout the investigation and Long's subsequent prosecution, each Defendant Officer had ample opportunity to prevent the violations of Long's rights—by reporting the misconduct of others and by disclosing suppressed evidence—but they instead chose to go along with the frame-up. ER-57 ¶115.

### A. Defendants Suppress a Report Documenting Their Discovery of Physical Evidence at the Scene that Establishes Long's Innocence

Weeks, Anderson, Verdugo, Bloomfield, and Newman suppressed highly exculpatory evidence showing Long could not have committed the crime. ER-45 ¶¶51-52. They discovered her jacket discarded at the scene, which Long was wearing when she returned home and found Conde dead. *Id.* According to a report by Anderson memorializing their discovery, these Defendants found Long's jacket on the bloody rug where Long was when she discovered Conde's body. *Id.* Anderson's report documented that when these Defendants found Long's jacket they observed that it had no blood on it. *Id.*

Given the 360-degree blood splatter around Conde, these Defendants knew it would be impossible for the real killer to avoid getting blood on their clothes during the crime. ER-40 ¶26, ER-45 ¶53. Nonetheless, Anderson and Weeks

suppressed Anderson's report documenting that these Defendants had observed that Long's jacket was blood-free when they first discovered it in the middle of the bloody crime scene. ER-45 ¶¶54-55. Weeks, Anderson, Verdugo, Bloomfield, and Newman each suppressed the fact that they had made that observation at the scene, and thus that they each knew that Long could not have been present during the murder. ER-45 ¶¶54-55.

This suppression had profound consequences in Long's criminal case. The report unambiguously showed that the Defendant Officers' initial observation of the physical evidence at the scene conclusively supported Long's account that she had arrived home after the murder to discover Conde's body. *Id.* Simultaneously, that evidence fatally undermined the Defendants' theory that Long was the murderer. *Id.* The suppressed evidence would have impeached the Defendants' entire account of how the crime occurred and how their investigation unfolded. *Id.*

Long, of course, attempted to defend herself at trial by arguing her clothes were not bloody. *Id.* But her defense was no match for the Defendants' alternative account of her guilt. *Id.* All the while, however, the Defendants were suppressing evidence that would have provided direct police corroboration of Long's defense. *Id.* Without the report, Long could not show that the police, too, had observed and documented her jacket, free of blood, in the middle of the bloody scene. *Id.*

**B.      Defendants Suppress Evidence about Lovejoy and Bugarski**

Defendants' efforts to frame Long did not end there. They also suppressed evidence implicating alternative suspects Lovejoy and Bugarski.

**1. Suppressed Reports Identifying Alternative Suspects and Questioning Their Credibility**. Weeks and Anderson suppressed reports they wrote identifying Lovejoy and Bugarski as alternative suspects and questioning their credibility. ER-42-43 ¶¶41-43. Two reports by Anderson reflected Defendants' belief that Bugarski was lying to them and might have been involved in the murder, *id.*, and other reports documented that Lovejoy had lied to Defendants when she denied vandalizing Conde's truck before the murder, ER-43 ¶44.

At her criminal trial, Long attempted to argue that Lovejoy and Bugarski were suspects who Defendants should have investigated instead of her. ER-42-43 ¶¶41, 44-45. Thus, the trial turned in part on the jury's assessment of Lovejoy's and Bugarski's credibility. *Id.* By suppressing their reports, Weeks and Anderson prevented Long from impeaching Lovejoy and Bugarski with their previous lies to the police, which impeached their credibility. ER-43 ¶44. For instance, prosecutors presented Lovejoy as a truthful witness who admitted to police that she broke the law. *Id.* But Long could not rebut that presentation with the evidence that Lovejoy previously lied to the police about vandalizing Conde's truck. *Id.* Moreover, Weeks's and Anderson's suppression of these reports stopped Long from

impeaching Defendants' account of the investigation, in which they contended that Long was the sole suspect. ER-42 ¶40, ER-53 ¶97.

**2. Suppressed Evidence about Bugarski's Alibi**. Weeks, Anderson, and Bloomfield also suppressed evidence that undermined Bugarski's alibi. ER-43-44 ¶¶40, 46-49, ER-53 ¶97. Bugarski's early accounts of his alibi gave Defendants good reason to suspect him of the crime and caused them to doubt his alibi. *Id.* But Weeks, Anderson, and Bloomfield suppressed Bugarski's early accounts: they suppressed documents detailing the alibi that Bugarski gave for the morning of October 6, ER-44 ¶¶47-48; they suppressed alibi information provided by Bugarski during an early interview with Weeks, *id.*; and they suppressed information that Bugarski gave to Anderson during portions of an interview that Anderson purposefully conducted away from a recording device so the things Bugarski said would not be recorded. *Id.*

Because of these suppressions, Bugarski had multiple days to refine an alibi, supported by witnesses, suggesting he was innocent. ER-44 ¶49. He did so in concert with these Defendants, who were determined to exonerate him and pin the crime on Long. *Id.*

In addition, Long could not impeach Bugarski's alibi with inconsistent early accounts at trial. ER-42 ¶41, ER-43-44 ¶¶46-49, ER-53 ¶¶96-97. Moreover, she could not impeach Defendants' theory that she was the murderer with evidence

that Bugarski had given police an alibi initially that gave them reason to suspect

him. ER-42 ¶41, ER-43-44 ¶¶46-49, ER-53 ¶¶96-97.

**3. Suppressed Evidence About Lovejoy's Alibi**. Anderson, Bloomfield,

and Newman also suppressed evidence that undermined Lovejoy's alibi. ER-44

¶50. These Defendants conducted interviews with Lovejoy before her recorded

polygraph examination, but they suppressed the content and recordings of those

interviews, including Lovejoy's alibi statements, so Long could not use them in her

defense. *Id.* The contents and recordings of these Defendants' interviews of

Lovejoy would have shown that they knew Lovejoy's alibi was implausible and

that she had the opportunity to commit the murder. *Id.*

**C.    Defendants Fabricate Witness Statements Implicating Long and
        Suppress Information about How They Obtained those
        Statements**

To frame Long, Defendants also knowingly fabricated witness accounts

about the night of the crime, using threats, coercion, and manipulation, and they

suppressed the fact that they had done so. ER-46-49 ¶¶56-68. By creating these

false accounts, Defendants undermined Long's alibi, creating the opportunity for

her to have committed the crime, and exonerated alternative suspects. *Id.*

**1. Fabricated Timeline for Long's Alibi Witness Jeff Dills**. Defendants

intentionally fabricated a false witness account for Long's alibi witness Jeff Dills

and forced him to adopt it. Weeks conducted an extensive interrogation and

threatened Dills, who had been with Long on the night of the crime, telling him that he was a suspect and might be prosecuted. ER-47 ¶60. Weeks used these threats and fed Dills information about the investigation in order to pressure him to adopt a timeline of his activities on the night of the crime that Defendants knew was false. ER-47 ¶61. That false timeline placed Dills far away from the crime scene at the time of the murder, clearing Dills of involvement. *Id.* And it critically undermined Long's alibi and implicated her. ER-47 ¶62. Specifically, the timeline Defendants forced Dills to adopt placed Long at the crime scene at 1:20 a.m., sufficiently in advance of her 911 call at 2:09 a.m. that it created a window in which Long could have committed the murder. ER-47 ¶63. Without this fabricated timeline, prosecutors in Long's criminal case could not have argued that Long had time to commit the murder, dispose of the weapon, and clean herself up before calling 911, and Long would have had a solid alibi. ER-47 ¶64.

Not only did Weeks fabricate a false timeline for Dills, but he suppressed the tactics he used to force Dills to adopt the account. ER-48 ¶65. Defendants suppressed the details of an extensive interrogation of Dills that Weeks conducted on October 6, which concerned Dills's location at the time of Conde's murder. *Id.* By suppressing information about interactions between Weeks and Dills, Defendants made it impossible for prosecutors, Long, or her defense attorneys to discover that they had forced Dills to adopt a fabricated account. *Id.*

**2. Fabricated Timeline for Lovejoy's Alibi Witness Oscar Castaneda**. At the same time, Weeks intentionally manipulated and coerced witness Oscar Castaneda to provide a false timeline of his activities on the night of the murder to exonerate Lovejoy. ER-46 ¶58. Weeks had Castaneda shift his account of his and Lovejoy's activities later in time, so that Castaneda's story was that he returned home from an outing with Lovejoy later than he had, which supported Lovejoy's eventual alibi. *Id.* Weeks got Castaneda to provide this account by telling him that Lovejoy was not involved in the crime, that Long was accusing Lovejoy, and that police needed Castaneda to say that he was with Lovejoy when the crime occurred. *Id.* Again, Weeks suppressed the improper tactics and coercion he used with Castaneda, and he suppressed that he fabricated Castaneda's account of when he left Lovejoy on the night of the murder. ER-47 ¶59.

**3. Fabricated Timeline for Linda Alexander**. Glenn and Weeks also intentionally manipulated neighborhood witnesses to corroborate the false timeline they had fabricated to implicate Long and to support Defendants' theory of the case. ER-48 ¶66. For example, on the night of the crime, a witness named Linda Alexander heard a car alarm, a motorcycle leave, and a female voice screaming hysterically shortly after. ER-48 ¶67. Alexander's initial witness account supported Long's theory that she had been dropped off at home by Dills on his motorcycle, discovered the body, and called the police immediately. *Id.* But Glenn and Weeks

manipulated Alexander to significantly lengthen the amount of time between when she heard the car alarm and motorcycle and the time when she heard screaming. ER-49 ¶68. They did so to ensure that they could make the case that Long was at home with enough time to kill Conde, dispose of the weapon, and clean herself up before calling the police. ER-48-49 ¶¶66, 68. And, they suppressed that they had altered Alexander's account. *Id.*

If Defendants had not fabricated witness accounts, Long could have presented a solid alibi at trial, and she would have had evidence to impeach and to implicate alternative suspects. ER-46 ¶57, ER-51 ¶¶77-85. Moreover, if Defendants had disclosed the tactics they used with these witnesses, Long would have been able to impeach Defendants' theory of the case and the witnesses' testimony implicating her. ER-47 ¶59, ER-51 ¶85.

### D. Defendants Destroy and Suppress Physical Evidence

Finally, Anderson, Newman and Verdugo purposefully suppressed and destroyed critical physical evidence. ER-49 ¶¶69-72. These Defendants found an unexplained champagne bottle and cup at the scene, demonstrating that other individuals had been present with Conde close in time to the crime. *Id.* Forensic testing of that evidence would have shown the identity of those individuals and would have exonerated Long. *Id.* But these Defendants destroyed the evidence before it could be tested. *Id.*

In addition, these Defendants intentionally did not collect other key physical evidence at the crime scene, ensuring that it, too, was destroyed. *Id.* Among this evidence were fingerprint impressions and DNA from the door used by the perpetrator to gain access to the home, from a door leading from the garage to the house (which had been propped open during the assault), and from the kitchen cabinet (which contained a change bowl associated with alternative suspect Bugarski that disappeared during the crime). ER-49-50 ¶¶69-73. Again, testing of this evidence would have identified other individuals present at the scene of Conde's murder and would have exonerated Long. *Id.*

These Defendants destroyed and did not collect these items of evidence because they could already place their chosen suspect, Long, at the scene of the crime—she had discovered Conde's body—and they wanted to suppress evidence that would implicate alternative suspects and call Long's guilt into question. ER-49 ¶71. Without this evidence, Long could not identify other suspects, and she could not undermine Defendants' false evidence suggesting that she was the only other person in the house that night. ER-49-50 ¶¶69-73.

## VI.   LONG'S WRONGFUL CONVICTION

Defendants' fabrication and suppression of evidence caused Long to be prosecuted for Conde's murder. ER-50 ¶74, ER-51 ¶¶77, 85, ER-53-55 ¶¶94-105. At Long's first trial, nine of 12 jurors voted "not guilty." ER-51 ¶78. Long's

criminal proceedings and the witness and police testimony against her were corrupted by Defendants' fabricated evidence; and because of Defendants' suppression of evidence, Long was deprived of evidence that showed she was innocent, that would have impeached witnesses against her, and that would have let her fairly defend herself against Defendants' false allegations. ER-36 ¶¶5-8, ER-51 ¶85. Long was wrongly convicted at her second criminal trial. ER-51 ¶¶77-79. She was sentenced to 15 years to life. ER-51 ¶81.

At the time, Long was a young mother of two children. ER-52 ¶86-90. Long's formative adult years were consumed with the horror of wrongful imprisonment. *Id.* She missed out on the lives of her family and friends, and she was not present to raise her kids. *Id.* Her career as a nurse came to a halt. *Id.* Long was branded a murderer for a crime she had nothing to do with. *Id.*

## VII. LONG FIGHTS FOR HER FREEDOM AND IS EXONERATED

Behind bars Long maintained her innocence and fought to clear her name. ER-52 ¶91. Courts reviewing her case acknowledged Long's innocence and feared she had been wrongly convicted. Following her second trial, the trial judge said, "To make a perfectly clear record in this matter, if this was a court trial, … I would have found the defendant not guilty." ER-51 ¶80; *In re Long*, 476 P.3d 662, 667 (Cal. 2020). Reviewing Long's §2254 petition, this Court said, "Were we sitting as the reviewing court on direct appeal, we might have found the evidence to be

insufficient," *Long v. Johnson*, 736 F.3d 891, 897 (9th Cir. 2013), and Judge Watford added in a concurrence that he had "grave doubts about whether the State has convicted the right person in this case," *id.* (Watford, J., concurring). The state habeas trial court found "it highly unlikely that the petitioner committed the crime[.]" ER-132.

Finally, in November 2020, the California Supreme Court overturned Long's conviction, ER-53 ¶92, holding that the evidence against Long was weak and that her criminal defense attorney was ineffective in his failure to present a time of death expert, who would have testified that Conde had died significantly before Long arrived home, *In re Long*, 10 Cal.5th at 783-85. Prosecutors dismissed all charges in April 2021. ER-53 ¶93.

## SUMMARY OF THE ARGUMENT

Long is an innocent woman who was wrongly convicted of a murder she did not commit. She sues to hold accountable police officers who caused her wrongful conviction. In her Complaint, Long pleads in rich detail deeply established constitutional claims that Defendants violated her rights when they fabricated, suppressed, and destroyed evidence in a conspiracy to frame her. Long's Complaint far exceeds federal pleading standards and the constitutional violations alleged are clearly established. The district court easily concluded as much. ER-13-20. If this Court reaches the merits, it would, too. Argument IV *infra*.

But this Court should not reach the merits because it lacks jurisdiction in this qualified-immunity appeal to consider Defendants' fact-based challenges to the Complaint. Defendants do not regard Long's allegations as true, draw inferences for her, or argue that her version of events fails to state clearly established constitutional violations. Instead, they ignore and discredit Long's central allegations, challenge her facts, ask for inferences in their favor, and improperly point to records outside of the pleadings, asking the Court to disregard the Complaint based on those records. Defendants ask the Court to resolve the merits before the case is litigated, but the collateral-order doctrine does not permit such interlocutory appeals. This Court should dismiss for lack of jurisdiction. Argument I *infra*.

Independently, this Court should dismiss for lack of jurisdiction because the appeal is moot. Defendants filed a notice of appeal from an order that rejected their motions to dismiss on nearly all grounds but granted Long leave to amend. After the notice of appeal, Long filed and the district court accepted a Second Amended Complaint, which is now the operative pleading. Defendants have moved to dismiss that new complaint. This appeal is therefore moot. Were it otherwise, this Court might resolve this appeal and immediately receive another appeal when the district court resolves the currently pending motion to dismiss. This Court should dismiss for that reason as well. Argument II *infra*.

Assuming this Court did have jurisdiction, it should summarily affirm because Defendants have forfeited or waived any argument for qualified immunity on central constitutional claims alleged in the Complaint. Defendants' opening brief contains no argument that they are entitled to immunity from Long's federal malicious prosecution claim or several of her suppression theories. This includes her claim that Defendants suppressed the report documenting that the Defendant Officers observed the jacket Long had been wearing blood-free in the middle of the bloody crime scene. This Court holds that "[i]f the operative complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then plaintiffs are entitled to go forward with their claims," *David v. Kaulukukui*, 38 F.4th 792, 799 (9th Cir. 2022), and Long's Complaint contains such allegations against each of the Defendant Officers that they do not challenge. There is no reason to discuss the limited qualified-immunity arguments the Defendant Officers may have preserved, considering that the Complaint plausibly pleads unchallenged claims against each of them and discovery will proceed on those claims. If it reaches the merits, this Court should hold Defendants have forfeited their claim of immunity at this stage. Argument III *infra*.

Long is the victim of an extreme injustice at Defendants' hands. The delay inflicted by this meritless appeal compounds the injustice. This Court should dismiss for lack of jurisdiction. In the alternative, it should summarily affirm.

## ARGUMENT

## I. THIS COURT SHOULD DISMISS DEFENDANTS' FACT-BASED CHALLENGES FOR LACK OF JURSIDICTION

This Court has jurisdiction to determine its jurisdiction and considers the question *de novo*. *U.S. v. Decinces*, 808 F.3d 785, 788 (9th Cir. 2015). Defendants assert without analysis that this Court has jurisdiction under 28 U.S.C. §1291, claiming broadly that denials of qualified immunity at this stage are appealable under the collateral-order doctrine. OB-19-20. But this exception to §1291's final judgment rule is not so broad, and Defendants' arguments do not fit within it.

As the Supreme Court reminded last Term, an order denying qualified immunity is only "sometimes immediately appealable." *Dupree v. Younger*, 143 S.Ct. 1382, 1388 n.3 (2023); *Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016) ("Not every interlocutory appeal from a denial of a [pre-trial motion] based on qualified immunity is immediately appealable."). Jurisdiction is "circumscribed," *Foster v. Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018), and review is proper if, and only if, the defendant "raises the 'purely legal' question of whether the facts alleged by the plaintiff demonstrate a violation of clearly established law," *Hernandez v. San Jose*, 897 F.3d 1125, 1132 (9th Cir. 2018).

But Defendants' arguments contest the facts alleged and depend on materials outside of the pleadings. As a result, there is no jurisdiction under the collateral-order doctrine, and this Court should dismiss the appeal.

## A.     The Jurisdictional Limits of Qualified-Immunity Appeals

Congress limits appellate jurisdiction to appeals from final judgments. 28 U.S.C. §1291. The final judgment rule is "borne out of recognition that piecemeal litigation increases trial costs, causes delays in the litigation, and risks the creation of unnecessary appellate work by presenting issues for review which could have been avoided entirely if trial had proceeded." *Armendariz v. Penman*, 75 F.3d 1311, 1316 (9th Cir. 1996) (*en banc*).

The collateral-order doctrine is an exception to the final judgment rule, permitting the immediate appeal of interlocutory orders that conclusively determine a disputed question, resolve an important issue completely separate from the merits, and are effectively unreviewable on appeal from a final judgment. *Cohen v. Beneficial Loan Corp.*, 337 U.S. 542, 546 (1949).

*Mitchell v. Forsyth* extended this exception to pretrial orders denying qualified immunity. 472 U.S. 511, 525-30 (1985). But "[w]e must be cautious not to expand the *Mitchell* exception beyond its intended scope," *Armendariz*, 75 F.3d at 1316. "[T]he *Cohen* framework breaks down if there is no separation between the merits of the underlying lawsuit and the subject matter of the collateral order being appealed." *Jones v. Clark*, 630 F.3d 677, 679 (7th Cir. 2011). "The problem, as the [Supreme] Court has recognized, is that a great number of orders denying

qualified immunity at the pretrial stage are linked closely to the merits of the plaintiff's claim." *Id.*

To manage that problem, *Johnson v. Jones* drew a strict line: jurisdiction in qualified-immunity appeals is limited to "abstract issues of law." 515 U.S. 304, 317 (1995). Typically, that "abstract issue" is "whether the federal right allegedly infringed was clearly established." *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). Other arguments are outside the scope of appellate jurisdiction, including requests that an appellate court resolve factual disputes, adopt a new version of the facts, weigh the evidence, or draw different inferences. *Johnson*, 515 U.S. at 316; *Reed v. Hammond*, No. 22-35355, 2023 WL 4542017, at *1 (9th Cir. July 14, 2023).

### B.     Stipulating to Plaintiff's Version of the Facts

Officials appealing denials of qualified immunity often secure jurisdiction by asserting that they will adopt a plaintiff's facts and present purely legal issues based on those facts. *Adams v. Speers*, 473 F.3d 989, 991 (9th Cir. 2007) (The "exception to the normal rule prohibiting an appeal before a trial works only if the appellant concedes the facts and seeks judgment on the law"). But when that assertion turns out to be false—when the appeal challenges the plaintiff's facts, either explicitly or implicitly by presenting arguments inconsistent with them—appellate courts lack jurisdiction.

This jurisdictional limit applies with full force when purportedly legal arguments stray into factual territory. *Ashcroft v. Iqbal* reminded that a "'fact-related' legal inquiry" is beyond appellate jurisdiction, 556 U.S. 662, 674 (2009), and this Court held recently that it lacks jurisdiction when a legal argument is actually a "poorly disguised" factual attack, *Peck v. Montoya*, 51 F.4th 877, 886 (9th Cir. 2022); *Strand v. Minchuk*, 910 F.3d 909, 914 (7th Cir. 2018) ("If we detect a 'back-door effort' to contest facts on appeal, we lack jurisdiction.").

When immunity arguments turn on factual challenges to a plaintiff's version of events, this Court enforces jurisdictional limits and dismisses appeals. *Estate of Anderson v. Marsh*, 985 F.3d 726, 732-33 (9th Cir. 2021). ("To the extent [this Court's cases] involved arguments on interlocutory appeal that boiled down to factual disputes about the record, [this Court] applied *Johnson* to hold that we lacked jurisdiction over such arguments."); *Reed*, 2023 WL 4542017, at *1 ("This rule forecloses interlocutory review of any fact-related dispute about the pretrial record."); *Voskanyan v. Upchurch*, No. 21-55333, 2022 WL 4181664, at *2 (9th Cir. Sept. 13, 2022) (dismissing because "[a]lthough appellants briefly argue that their conduct does not violate clearly established law, they do so exclusively by asking this Court to take their version of the facts as true and arguing that this version of events does not violate [the plaintiff's] clearly established constitutional

rights"); *Peck*, 51 F.4th at 886; *Advanced Building v. California Highway Patrol*, 918 F.3d 654, 657 (9th Cir. 2019); *Foster*, 908 F.3d at 1213.

## C. Appellants Present Factual Challenges, Not Legal Issues

Applying these standards to Defendants' brief, it is apparent this Court lacks jurisdiction. Absent from their brief is any attempt to accept Long's allegations. Defendants do not acknowledge—let alone attempt to satisfy—the jurisdictional requirement just discussed. Instead, they omit allegations from the Complaint, mischaracterize and contest Long's facts, rely on their own version of events, draw inferences in their favor, and contest the facts using an improper and disputed reading of materials from outside of the Complaint.

**1. Defendants Ignore Allegations in the Complaint**. The two-page summary of Long's Complaint in Defendants' Statement of the Case provides a high-level outline of Long's theories, but it does not discuss factual allegations whatsoever. OB-24-25. Defendants assert in a footnote that they will address factual allegations, OB-25 n.2, but the brief omits any discussion of many of the central allegations in the Complaint, including: Long's claim that they maliciously prosecuted and illegally detained her without probable cause (Count II), ER-55-56; that the Defendant Officers suppressed a report documenting that they observed Long's jacket blood-free at the scene, Statement V(A) *supra*,[1] that they suppressed

---

[1] Defendants do not discuss these allegations, except to assert affirmatively

the tactics Weeks used during interviews with Dills and Castaneda to obtain false statements, Statement V(C)(1) *supra*, and that Weeks and Glenn fabricated a timeline for neighborhood witness Alexander to undermine Long's alibi, and they suppressed that they had done so, Statement V(C)(3) *supra*. Defendants' decision to pretend these allegations are not there contradicts the Complaint and deprives this Court of jurisdiction.

**2. Defendants Contest Allegations in the Complaint**. The same is true of Defendants' decision to contest and mischaracterize Long's allegations. There are too many examples to catalog them all, but consider:

- Defendants paint Long as guilty, calling her challenges to her conviction "unsuccessful" and asserting that her innocence claims were rejected, ignoring Long's allegations that she is innocent and was exonerated by the California Supreme Court after numerous judges expressed concern she had been wrongly convicted, compare OB-17-18, with Statement VII *supra*;

- They repeatedly assert they did not engage in "constitutional misconduct," starting their argument section with the assertion "no court found the officers did anything unconstitutional," which contradicts dozens of paragraphs of the Complaint (including the contention that Defendants' suppression of evidence corrupted the judicial decisions rendered during the criminal proceedings), compare OB-28, OB-18-19, with Statement V-VI *supra*;

- They contend Long has not alleged that Defendants knew of Long's innocence, when the Complaint alleges throughout that that "they knew Plaintiff was innocent," *e.g.*, ER-55 ¶107, and knew "Long could not have been present at

---

that they will not discuss them because they are "untrue." OB-25 n.2. The waiver effect of this assertion is discussed below. Argument III *infra*. With respect to jurisdiction, Defendants' assertion that a central allegation is "untrue" explicitly challenges the Complaint, which directly contradicts the obligation to take Long's allegations as true.

the time of the murder," ER-45 ¶54, compare OB-86, with Statement V(A), V(C)(1), V(C)(3) *supra*;

- They suggest that the evidence they suppressed—including that Lovejoy and Bugarski lied to them and that Defendants doubted their alibis—was not *Brady* evidence, when Long alleges in detail the exculpatory and impeachment value of each of piece of suppressed evidence, compare OB-38-39, OB-97, with Statement V(B), V(C)(2)-(3) *supra*;

- They claim certain items of suppressed evidence would have been inadmissible during the criminal proceedings, had they been disclosed, which is nowhere alleged in the Complaint and is contrary to allegations about how Long and her attorneys could have used the evidence to defend her, compare OB-97-98, with Statement V(B) *supra*;

- As discussed, they label as "untrue" Long's allegations that they suppressed the report documenting that they discovered Long's jacket blood free at the scene, compare OB-25, with Statement V(A) *supra*;

- They claim that the false timelines fabricated by Defendants and forced on third-party witnesses to implicate Long "were not evidence," which is simply a denial of the allegations, compare OB-84, with Statement V(C) *supra*;

- They re-cast their knowing fabrication of witness statements as witness manipulation, which they argue is permissible, disregarding Long's allegations that they used illegal tactics to force those witnesses to adopt fabricated accounts, and then suppressed that they had done so, compare OB-39-40, with Statement (V)(C) *supra*;

- They re-characterize their fabrication of Castaneda's false account exonerating Lovejoy, saying "asking for alibis to clear suspects is something investigators do every day," when the Complaint alleges much different investigative misconduct between Weeks and Castaneda, compare OB-89, with Statement V(B)(2)-(3), V(C)(2) *supra*;

- They assert Anderson, Newman, and Verdugo could not have participated jointly in misconduct when they processed the scene and destroyed physical evidence, that the destroyed evidence would not have exonerated Long, that they did not know someone other than Long had been at the scene, that they

acted negligently and not intentionally or in bad faith when they destroyed evidence, that they had no motive to avoid developing evidence that might exonerate Long, and that Long could have collected and tested physical evidence herself, when the Complaint alleges the opposite on each of those points, compare OB-76-81, with Statement V(D) *supra*.

This long list of disputed facts demonstrates that this appeal is far from the type that accepts a complaint as true and presents purely legal issues over which this Court might have jurisdiction.

### 3. Defendants Use Outside Evidence to Contradict the Complaint.

Jurisdiction is also lacking because Defendants point to evidentiary materials outside of the pleadings to attack the Complaint. Defendants improperly include more than 100 pages of selectively excerpted transcripts from Long's criminal proceedings in their excerpts of the record, ER-71-209, and they ask the Court to use these materials to resolve factual disputes and to credit their version of events:

- They cite decisions in Long's criminal case and post-conviction briefing as evidence that they did not engage in "constitutional misconduct" and to argue that the absence of allegations of police misconduct during the criminal case "speaks volumes" about the invalidity of Long's claims. Compare OB-17-18 & n.1, OB-29, with Statement V *supra*.

- They cite transcripts and judicial opinions to contest the allegation that they suppressed that Lovejoy lied to Defendants during her initial interviews with them about vandalizing Conde's truck, and to assert that they disclosed their interviews of Lovejoy. Compare OB 98-99, OB-101, with Statement V(B)(1), (3) *supra*.

- They cite a transcript to contradict the allegation that Dills was coerced to adopt Weeks's fabricated statement about the time he arrived home with Long on the night of the crime, arguing that the transcript shows Dills was not coerced. Compare OB-90, with Statement V(C)(1) *supra*.

28

- They cite transcripts to support their own account of what occurred during the cross-examination of various witnesses during Long's criminal trial. Compare OB-91, with Statement V(B)(1) *supra*.

Using these outside materials in this manner is prohibited, see Argument IV(A) *infra*, but it also injects more factual disputes into the appeal. While Defendants are wrong about what the materials show, those disputes must be resolved later, and Defendants' request that the Court consider them is yet another reason this Court lacks jurisdiction.

### D.     This Court Should Dismiss

Defendants' factual omissions, factual disputes, and arguments from evidence infect their legal contentions, making this appeal a mismatch for the collateral-order doctrine. Instead of raising legal issues separate from the merits, Defendants ask the Court to decide the merits—to rule that Defendants are entitled to immunity based on their own view of the facts—which is precisely what the final judgment rule prohibits. *Johnson*, 515 U.S. at 314-15 (arguments like these not "significantly different from the fact-related legal issues that likely underlie the plaintiff's claim on the merits"); *Iqbal*, 556 U.S. at 674 (improper to ask the Court "to consult a vast pretrial record").

Defendants' factual arguments and their fact-based legal contentions are outside this Court's jurisdiction. This Court recently held that dismissal is appropriate where the opening brief "does not challenge whether the facts alleged

29

in the complaint support a claim of violation of clearly established law," but instead "seeks a determination that facts not alleged in the complaint support a finding of qualified immunity." *E.J.T. v. Jefferson*, No. 21-35615, 2021 WL 5238200, at *1 (9th Cir. Oct. 12, 2021). This appeal is a "poorly disguised" effort to impermissibly contest the facts. *Peck*, 51 F.4th at 886. Because there is no purely legal immunity issue to resolve, this Court should dismiss.

It is worth emphasizing that this appeal represents an abuse of the doctrine that permits interlocutory appeals of immunity questions. The appeal delays a wrongful conviction case that will be a decade old when discovery begins, and one in which the parties know the facts will be hotly contested. Judicial resources are wasted and costs increased, all in an exercise more efficiently resolved through discovery and trial. The Supreme Court expressed concerns about appeals like this one in *Behrens*, suggesting courts should certify such appeals as frivolous and resolve factual disputes in the district courts. 516 U.S. at 310; see also *Coinbase, Inc. v. Bielski*, 143 S.Ct. 1915, 1922 (2023). These considerations further support enforcing jurisdictional limits and dismissing.

## II. THIS COURT SHOULD DISMISS THE APPEAL AS MOOT

Independently, this Court should dismiss the appeal because it is moot. *In re Roberts Farms*, 652 F.2d 793, 796 (9th Cir. 1981) (mootness "bar[s] consideration of an appeal on the merits"). As discussed in the Jurisdictional Statement above,

Defendants appeal from the district court's order denying in part and granting in part Defendants' motions to dismiss Long's First Amended Complaint, which granted her leave to amend. During the appeal, Long filed her Second Amended Complaint, adding to her *Monell* and Fourth Amendment allegations. Defendants moved to dismiss the Second Amended Complaint on the merits, and that new motion to dismiss is fully briefed.

An amended complaint replaces the previous complaint and renders it inoperative. *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012). This Court has recently applied this principle to dismiss appeals from inoperative versions of complaints. *Falck N. California Corp. v. Scott Griffith Collaborative Sols.*, 25 F.4th 763, 766 (9th Cir. 2022); *Zaragosa-Solis v. Gutierrez*, No. 23-15306, 2023 WL 5380302, at *1 (9th Cir. Aug. 22, 2023). In *Falck*, the district court entered an order that denied a defendant's motion to dismiss the first amended complaint and granted the plaintiff leave to amend. *Id.* at 765. The plaintiff filed a second amended complaint, and the defendant both moved to dismiss that second amended complaint and appealed the district court's denial of its motion to dismiss the first amended complaint. *Id.* Although the first and second amended complaints were similar, this Court dismissed the appeal as moot because the complaint challenged on appeal was a "legal nullity." *Id.* at 766. In *Zaragosa-*

*Solis*, the Court did the same, finding an appeal was moot where the challenged complaint was amended during the appeal. 2023 WL 5380302, at *1.

This Court should reach the same conclusion here. Defendants' appeal is moot because it concerns an inoperative version of Long's complaint. As in *Falck*, during this appeal Long filed a Second Amended Complaint, and Defendants moved to dismiss that new complaint on the merits and without challenging the district court's acceptance of it. 25 F.4th 763 at 765. By filing the new motion to dismiss, Defendants concede that the Second Amended Complaint is the operative pleading. This appeal, however, is based on Plaintiff's inoperative First Amended Complaint, which is now a "legal nullity." *Id.*

Dismissal in this context avoids issuing prohibited advisory opinions, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021), and it conserves judicial resources, ensuring that defendants cannot appeal one version of a complaint, move to dismiss an amended version, and then also appeal the decision regarding the amended version. Because this appeal challenges a pleading that is inoperative, this Court should dismiss the appeal as moot.

## III. DEFENDANTS HAVE FORFEITED THEIR IMMUNITY ARGUMENTS AT THIS STAGE

Assuming for the sake of argument that this Court has jurisdiction, it should hold that Defendants have forfeited their claim to qualified immunity at this stage of the case:

- Defendants' brief contains no argument for dismissal of Long's claim that they maliciously prosecuted her (Count II), ER-55-56 ¶¶106-113, other than the words "Fourth Amendment" in three headings. Defendants made a cursory argument for dismissal of this claim below, SER-67-69, SER-73, and the district court held that it was plausibly pleaded and clearly established, ER-14-15, ER-19. But Defendants abandon the issue on appeal.

- Defendants do not address Long's theory that they suppressed a report documenting their discovered Long's blood-free jacket, Statement V(A) *supra*, asserting they chose not to address the theory because they regard it as "untrue," OB-24 n.2. Perplexingly, Defendants claim the district court determined that this theory was not true, but that is incorrect—the order discusses the theory at length, concluding it plausibly states a clearly established claim. ER-16-17.[2]

- Defendants do not address the claim that they suppressed the tactics that Weeks used during interviews with Dills and Castaneda to obtain false statements implicating Long and exculpating Lovejoy. Statement V(C)(1) *supra*.

- Defendants do not address the claim that Weeks and Glenn fabricated a false timeline of what Alexander witnessed on the night of the crime to undermine Long's alibi and then suppressed that they had done so. Statement V(C)(3) *supra*.

On these claims, Defendants have forfeited (and in the case of Long's jacket theory, waived) any argument that they are entitled to immunity. *California v. Azar*, 911 F.3d 558, 573 n.1 (9th Cir. 2018) (undeveloped arguments forfeited); *Eberle v. Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990) (cannot raise new arguments in reply).

---

[2] Defendants reference the prior district court opinion, which dismissed the complaint without prejudice and with leave to replead. OB-25 n.2 (citing Dkt. 57). But that decision did not and could not find facts, an amended complaint with additional allegations has been filed since then, and the previous decision is not appealed here.

The consequence is that this Court can summarily affirm. A complaint need not plead legal theories at all. *Skinner v. Switzer*, 562 U.S. 521, 531 (2011). If Long's Complaint "contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then [she is] entitled to go forward with [her] claims." *David*, 38 F.4th at 799. Here, the Complaint contains allegations of wrongful acts violating clearly established law that Defendants do not challenge.

Interlocutory qualified-immunity appeals exist to ensure immune state officials avoid the burden of litigation. *Mitchell*, 472 U.S. at 527. But here Defendants forfeit any argument for immunity on numerous claims, and so discovery will take place and the case will proceed to summary judgment no matter what. Parsing Defendants' limited arguments on a smattering of theories will not affect the scope of discovery, and it makes little sense to conduct such analysis when the case will be remanded. This is particularly true given that Long need not plead legal theories in the first place, and even more so given the problematic factual disputes Defendants raise. If it reaches the merits, this Court should summarily affirm.

**IV. ACCEPTING LONG'S ALLEGATIONS AS TRUE, THE COMPLAINT PLAUSIBLY PLEADS CLEARLY ESTABLISHED CONSTITUTIONAL VIOLATIONS**

If this Court chooses to look past the jurisdictional defects and forfeitures to address Defendants' arguments, it should affirm. Long's Complaint plausibly pleads that each Defendant Officer committed acts of investigative misconduct that violated Long's clearly established constitutional rights.

**A. This Court Cannot Rely on Materials Outside of the Complaint**

Any analysis of Defendants' immunity must proceed based solely on Long's allegations, with all inferences drawn for her. *Polanco v. Diaz*, No. 22-15496, 2023 WL 5008202, at *4 (9th Cir. Aug. 7, 2023). This Court should reject Defendants' invitation to consider materials outside of the Complaint.

Defendants include evidentiary materials in their excerpts of the record and cite them. Argument I(C)(3) *supra*. The district court ruled it would take judicial notice only of the records' existence, but not the truth of facts asserted in them. ER-11-12. Defendants neither contest that decision nor argue that this Court should take judicial notice of the materials. Instead, they assert in a footnote that the materials are already "in the record" and claim that no request for judicial notice is required. OB-26 n.3 (citing *Japanese Village v. F.T.A.*, 843 F.3d 445, 454 (9th Cir. 2016) (in which this Court *rejected* a request to take judicial notice). Defendants

have forfeited the argument that this Court should take judicial notice of outside materials. *Azar*, 911 F.3d at 573 n.1; *Eberle*, 901 F.2d at 818.

Regardless, courts "may not consider material outside of the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)[.]" *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018). A challenge based on outside materials must be treated as a summary judgment motion, where both sides submit evidence, *id.*, which has not yet happened here. Federal Rule of Evidence 201 establishes a narrow exception for courts to take notice of "matters of public record," *Mack v. South Bay Beer*, 798 F.2d 1279, 1282 (9th Cir. 1986), but that exception cannot swallow the rule, and so judicial notice is allowed only where a fact "is not subject to reasonable dispute," FED. R. EVID. 201(b); *Lee v. Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001). A court may take notice of the fact that a judicial proceeding occurred, but it may not take notice of disputed facts in the records of that proceeding. *Id.*; see also *Khoja*, 899 F.3d at 999 ("[T]he unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery."). Defendants point to materials outside the Complaint for the prohibited purpose—to mount factual challenges to the Complaint. While the transcripts of Long's criminal case will ultimately support her account, this Court cannot consider those materials to resolve disputed facts at this stage.

**B.     Long Plausibly Pleads Clearly Established Constitutional Claims**

To succeed in this appeal, Defendants must demonstrate that qualified

immunity applies "based on the complaint itself." *O'Brien v. Welty*, 818 F.3d 920,

936 (9th Cir. 2016). "[L]ike any affirmative defense, qualified immunity may be

upheld on a 12(b)(6) motion only when it is established on the face of the

complaint." *Moore v. Gerstein*, 107 F.3d 16, 16 (9th Cir. 1996). "If the operative

complaint contains even one allegation of a harmful act that would constitute a

violation of a clearly established constitutional right, then [Long is] entitled to go

forward with [her] claims." *David*, 38 F.4th at 799; *Wong v. U.S.*, 373 F.3d 952,

956 (9th Cir. 2004) (a "skeletal—at best—factual picture sketched out in [a]

complaint" precludes qualified immunity). Applying this standard, the purely legal

question in this appeal is easy: Long plausibly pleads constitutional claims against

each Defendant Officer that were clearly established long before 2003.

To show that the law was clearly established, Long need not show the

precise action at issue has been held unlawful. *Sandoval v. San Diego*, 985 F.3d

657, 680 (9th Cir. 2021). "The salient question is whether the state of the law at the

time of an incident provided fair warning to the defendants that their alleged

conduct was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (cleaned

up). Where conduct is extreme or outrageous, such that no reasonable official

would conclude it was permissible, immunity is unavailable. *Taylor v. Riojas*, 141

S.Ct. 52, 53-54 (2020). The Supreme Court has emphasized the importance of drawing inferences for the nonmovant when courts consider whether the law was clearly established. *Tolan*, 572 U.S. at 657.

The district court concluded the law governing Long's claims was clearly established, during both rounds of motions to dismiss. ER-18-20; Dkt. 57 at 18. Defendants' arguments otherwise lack merit.

**1. Fabrication of Evidence Is Plausibly Alleged and Clearly Established**.

**(a)** To succeed on her fabrication claim, Long must plausibly plead that the Defendant Officers deliberately fabricated evidence that was used against Long in the criminal case. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*); *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015). Long plausibly pleads such a claim against Weeks and Glenn.

Long's defense was that she arrived home after the crime occurred, found Conde's body, and immediately called 911. She alleges Weeks and Glenn knowingly fabricated evidence in the form of false statements from third-party witnesses, which they obtained by threat, coercion, and manipulation. Statement V(C) *supra*. The fabricated witness statements were accounts that were different than the accounts these witnesses gave initially. *Id.* They inculpated Long by establishing a false timeline of events on the night of the crime that put Long at home early enough that she had time to commit the crime, discard the weapon,

clean herself, and call 911. *Id.* At the same time, the fabricated timelines exculpated alternative suspects. *Id.*

Weeks interrogated Jeff Dills at length, threatened him with prosecution, and fed him facts, forcing him to adopt an account Weeks knew to be false, in which Dills dropped Long at her house on the night of the crime nearly an hour before she called 911. Statement V(C)(1) *supra*. This false timeline from the person Long had been with on the night of the crime was catastrophic to Long's defense. *Id.*

Weeks also manipulated Oscar Castaneda—telling him that Lovejoy was not involved in the crime and that police needed Castaneda to say that he was with Lovejoy at the time of the crime—and coerced him to provide an account Weeks knew to be false, in which Castaneda returned home with Lovejoy from an outing later in the evening than he had. Statement V(C)(2) *supra*. This false timeline supported Lovejoy's alibi, making it impossible for her to have been near the scene at the time of the crime. *Id.*

Finally, Weeks and Glenn manipulated neighborhood witness Linda Alexander and caused her to change her account of her observations on the night of the crime one which corroborated Long's defense, to a later version that Weeks and Glenn knew was false. The fabricated account lengthened the amount of time between the sound of Long being dropped off at home and the time that a woman screamed. Statement V(C)(3) *supra*. Again, the fabricated account allowed

Defendants to pursue a theory that Long had the opportunity to commit the crime. *Id.* The fabricated witness statements were used against Long in her criminal case. Statement V(C), VI *supra*.

**(b)** The law governing police fabrication of evidence was clearly established before 2003. For a century, the Supreme Court has held that police violate due process when they fabricate evidence used to charge, prosecute, and convict individuals, e.g., *Pyle v. Kansas*, 317 U.S. 213, 216 (1942); *Napue v. Illinois*, 360 U.S. 264, 269 (1959), and the Supreme Court and this Court held before Long's conviction that this constitutional rule "has long been established," *Banks v. Dretke*, 540 U.S. 668, 694 (2004), and "is virtually self-evident," *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (*en banc*); see also *Rodarte v. Gutierrez*, No. 21-35973, 2023 WL 109723, at *1 (9th Cir. Jan. 5, 2023) ("patently obvious" that fabricating witness statement unconstitutional). These cases put Weeks and Glenn fairly on notice that they could not knowingly fabricate witness accounts, which were materially different from those witnesses' initial accounts, and force those witnesses to adopt the false accounts by threat, coercion, and manipulation. Were there any doubt, this Court held in *Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1105, 1112, 1113-15 (9th Cir. 2018), that materially indistinguishable police misconduct with a third-party witness was clearly established as unlawful by 1990.

**(c)** Weeks and Glenn mainly argue that Long fails to plausibly allege they intended to fabricate evidence. OB-83-94. Ultimately at trial, Long will be able to prove Defendants' intent to fabricate evidence either directly, by showing that they knew the evidence was false, *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017); or circumstantially, by showing that Defendants continued investigating Long "even though [they] knew or should have known that [she] was innocent," or "used investigative techniques that were so coercive and abusive that [they] knew or should have known that those techniques would yield false information." *Bradford*, 803 F.3d at 386. These are not independent theories of liability; they are ways to prove intent. *Id.*

For starters, Defendants assert incorrectly that Long does not attempt to allege direct evidence that they intentionally fabricated evidence, claiming that she only proceeds on circumstantial theories. OB-85. That flies in the face of the allegations just discussed. Long pleads that Weeks and Glenn intentionally invented witness accounts from at least three witnesses that they knew were false and that contradicted the truthful accounts that those witnesses had originally given. She alleges that they did so to falsely create a time period during which Long could have committed the murder, and to exonerate Lovejoy. They took original statements that did not give Long the opportunity to commit the crime and turned them into statements that did; and they took an original statement that gave

Lovejoy the opportunity to commit the crime, and turned it into a statement that gave her an alibi. Just as deliberately misquoting and misrepresenting witness statements is direct evidence of intentional fabrication, *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010), so is inventing false accounts for witnesses to adopt.

Moreover, contrary to Defendants' arguments, OB-86, Long also plausibly pleads circumstantial evidence of intent. Although Defendants mischaracterize the facts, Long alleges that they knew early in the investigation that she was innocent, that the evidence pointed away from her, that two alternative suspects were better suspects, and that Defendants agreed to frame Long despite knowing she was innocent. Statement VI, VI(A) *supra*. Those allegations plausibly plead circumstantial evidence of Weeks' and Glenn's intent. *Spencer*, 857 F.3d at 799.

Long also alleges that Weeks used coercive and improper techniques with Dills and Castaneda, which he knew were likely to generate false information. Allegations of threatened criminal charges, intense interrogation, and feeding facts to witnesses to obtain a tailored statement, all of which Long plausibly pleads, are circumstantial evidence of intentional fabrication as well. *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013).[3]

---

[3] Defendants argue that aggressive interviewing tactics do not automatically prove intentional fabrication, because a coerced statement may be true. OB-86-88. While that may be true, Long alleges the opposite—that Weeks coerced and

Finally, the direct and circumstantial methods are not theories of lability, but rather ways of ultimately proving intent. *Bradford*, 803 F.3d at 386. When it comes to pleading, Rule 9(b) allows Long to allege intent, knowledge, and other mental states generally, *Empress LLC v. San Francisco*, 419 F.3d 1052, 1055-56 (9th Cir. 2005), and Long pleads Defendants' intent to fabricate evidence pervasively. ER-46 ¶¶56-58, ER-47 ¶¶60-63, ER-48-49 ¶¶66-68, ER-50 ¶76, ER-53 ¶96, ER-54 ¶103. Long has plausibly pleaded Weeks's and Glenn's intentional fabrication.

Defendants conclude their arguments about Long's fabrication claims with two points that can be disposed of quickly. First, they assert Dills was not coerced, OB-90, which impermissibly contests the facts, Argument I *supra*, relying improperly on materials outside of the Complaint, Argument IV(A) *supra*.[4] Second, they wrongly claim that Long's opportunity to cross-examine the fabricated witness statements at trial defeats her due process claim, citing no case law supporting such a rule. OB-91. On the contrary, "[f]alsified evidence will *never* help a jury perform its essential truth-seeking function. That is why convictions premised on deliberately falsified evidence will always violate the defendant's right to due process." *Avery v. Milwaukee*, 847 F.3d 433, 439 (7th Cir.

---

threatened Dills and Castaneda to adopt lies—and her allegations are taken as true.
    [4] The materials merely confirm that during a sentencing hearing a defense attorney made a representation about a videotaped interview with Dills, but nothing about that representation or that video establishes that there were no other interviews between Weeks and Dills, and Long alleges that there were.

2017). Long alleges in detail how Weeks's and Glenn's intentionally fabricated witness accounts were presented as evidence against her in the criminal case, ER-43-51, and no amount of cross-examination could save Long from that false evidence.

### 2. Suppression of Evidence Is Plausibly Alleged and Clearly Established

**(a)** Long has also plausibly pleaded numerous theories that Defendants suppressed material exculpatory and impeachment evidence, violating due process. *Kyles v. Whitley*, 514 U.S. 419 (1995). Long must plead that the Defendant Officers suppressed evidence favorable to her, that was material to the criminal case, and that they did so intentionally or with deliberate indifference to or reckless disregard for Long's rights. *Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018). Favorable evidence includes not only evidence that would exculpate Long, but also evidence that might impeach the credibility of witnesses or "the thoroughness and even the good faith of the investigation." *Kyles*, 514 U.S. at 445.

"Evidence qualifies as material when there is any reasonable likelihood it could have affected the judgment of the jury." *Wearry v. Cain*, 577 U.S. 385, 392, (2016). A litigant "need not show that he 'more likely than not' would have been acquitted had the new evidence been admitted. … He must show only that the new evidence is sufficient to 'undermine confidence' in the verdict." *Id.* When conducting this analysis, the Court must consider the suppressed evidence

cumulatively, not piece by piece. *Wearry*, 577 U.S. at 394. Long plausibly pleads that each Defendant Officer suppressed at least one and often multiple items of material exculpatory and impeachment evidence from state prosecutors, Long, and her attorneys.

Although Defendants have waived any argument on the theory, Argument III *supra*, Long alleges that Anderson and Weeks suppressed a report by Anderson documenting that, when Anderson, Weeks, Verdugo, Bloomfield, and Newman responded to the crime scene they found Long's jacket on the rug near where Long had discovered Conde's body and observed that the jacket had no blood on it, unlike everything else in the bloody surround. Statement V(A) *supra*. Given the blood splatter in every direction, these Defendants knew it was impossible that the real killer had remained blood free, and thus they recognized that the blood-free jacket meant Long was not the killer. *Id.* However, they suppressed their report and the fact that they had observed the blood-free jacket, preventing Long from presenting evidence that the investigating officers themselves could corroborate her defense that her blood-free clothing meant that she had arrived home after the murder. *Id.* The evidence not only would have supported Long's defense, but she could have used it to cross-examine Defendants' theory of the crime and their account that their unbiased investigation led to Long. *Id.*[5]

---

[5] Defendants assert that this allegation is untrue, and they do not discuss it,

Additionally, Long alleges that Weeks and Anderson suppressed reports reflecting that the Defendants' Officers believed that Lovejoy and Bugarski were alternative suspects and that they had lied to police, which would have undermined the alternative suspects' credibility at trial and Defendants' account of their investigation, in which Long was the sole suspect. Statement V(B)(1) *supra*.[6]

Long also alleges that Weeks, Anderson, and Bloomfield suppressed early accounts of Bugarski's alibi, which gave the Defendant Officers reason to suspect Bugarski in the crime, and which would have impeached Bugarski's later alibi at

---

which is problematic for the reasons already discussed. Arguments I & III *supra*. But it is also problematic because Defendants do not explain why they think the allegation is untrue. They were similarly cagey in the district court, pointing generally to extrinsic evidence without explaining how it disproved Long's allegations. SER-95-96. There is no dispute, as Long alleges, that Long attempted to defend herself at trial by pointing to the clothes she had worn when she discovered Conde's body and telling the jury that they were not covered in blood. The prosecution denied that this was exonerating evidence and presented evidence implicating Long. All the while, Defendants withheld that they had a report documenting that they had observed the same thing that Long relied upon for her defense, and they kept their own impressions of that key piece of physical evidence from Long, so that she could not use their account to corroborate her defense, to impeach the evidence of her guilt, and to impeach Defendants' investigation. At best for Defendants, the extrinsic evidence that they invoke confirms that this was highly material exculpatory and impeachment evidence that they suppressed. See Dkt. 84 at 3-4.

[6] Defendants call Long's allegations that they suppressed Lovejoy's lies "provably false," pointing to extrinsic evidence. OB-98. Again, this is improper, but it is also factually incorrect: As Long alleges, while Lovejoy eventually admitted to vandalizing Conde's truck, Long was deprived of the opportunity throughout the prosecution to impeach Lovejoy's credibility with her prior lies to the police, which the Defendant Officers had documented in undisclosed reports. ER-43 ¶¶44-45.

trial and Defendants' contention that he was not involved in the crime. Statement V(B)(2) *supra*.[7] And she alleges that Anderson, Bloomfield, and Newman suppressed evidence showing that Lovejoy's alibi was implausible, that she had the opportunity to commit the crime, and that Defendants knew it, which would have impeached Lovejoy's alibi and would have allowed Long to established that she might have been involved in the crime. Statement V(B)(3) *supra*.

Finally, Weeks and Glenn suppressed the fact that they used threats, coercion, and manipulation to force third-party witnesses to adopt fabricated accounts of their whereabouts on the night of the crime. Statement V(C) *supra*.[8]

**(b)** Each of these suppressions of evidence violated clearly established law. "[I]t was clearly established well before [1984] that police officers were bound to disclose material and exculpatory evidence," meaning evidence "'favorable to the accused, either because it is exculpatory, or because it is impeaching.'" *Carrillo v. Los Angeles*, 798 F.3d 1210, 1221 (9th Cir. 2015); see also *Mellen*, 900 F.3d at

---

[7] Defendants contend that Long does not provide enough detail about the substance of the initial Bugarski's alibi that they suppressed. But Long alleges that it was an alibi that did not hold up and gave Defendants reasons to suspect Bugarski. Statement V(B)(1)-(2) *supra*. That is enough factual detail to satisfy Rule 8.

[8] While Weeks and Glenn argue that they did not intentionally fabricate witness accounts, Argument IV(B)(1) *supra*, they do not challenge Long's allegations that they suppressed evidence about the tactics that they used to obtain those witness accounts, forfeiting any argument, Argument III *supra*. This is an independent theory of *Brady* liability. *Avery*, 847 F.3d at 443-44.

1088 ("[T]he law at the time of the 1997-98 investigation clearly established that police officers investigating a criminal case were required to disclose material, impeachment evidence to the defense.").

This Court holds that the law is clearly established at the requisite level of specificity by past decisions that prohibit the suppression of exculpatory or impeachment evidence favorable to the defense in general, and so it is unnecessary to identify a case concerning the suppression of the precise type of evidence at issue. *Carrillo*, 798 F.3d at 1226-27; *Tennison v. San Francisco*, 570 F.3d 1078, 1093-94 (9th Cir. 2009) (criticizing defendants for defining the right "too narrowly"). This Court need go no further.

Nonetheless, the Supreme Court and this Court *have* decided that it was clearly established before 2003 that police could not suppress precisely the types of evidence that Long alleges Defendants' suppressed here. *Kyles*, 514 U.S. at 441-54 (established by 1995, prior inconsistent witness statements); *Mellen*, 900 F.3d at 1103-04 (by 1997, evidence that gave police officer reason to believe that a key person in the investigation was a liar); *Carrillo*, 798 F.3d at 1219-25 (by 1984, evidence impeaching eyewitness testimony); *id.* (by 1984, evidence potentially inculpating another person); *Tennison*, 570 F.3d at 1093-94 (by 1990, alternate suspect's incriminatory statements); *Bailey v. Rae*, 339 F.3d 1107, 1116 (9th Cir. 2003) (established by 2003 that independent witness evidence corroborating a

defense theory is not cumulative and must be disclosed). The Defendant Officers are not entitled to qualified immunity on any of Long's suppression claims, even ignoring their forfeitures and waivers.

**(c)** Defendants' scattershot arguments otherwise do not establish an entitlement to immunity. They characterize the suppression of documents identifying alternative suspects, documenting their lies, and undermining their alibis as suppressions of Defendants' "opinions," which they say are not *Brady* evidence. OB-97, OB-100. This is a factual mischaracterization of the allegations regarding alternative suspects, but regardless this Court's cases hold that police evidence implicating alternative suspects or documenting that key witnesses are liars must be disclosed. *Mellen*, 900 F.3d at 1103-04; *Carrillo*, 798 F.3d at 1219-25; *Tennison*, 570 F.3d at 1093-94.

Defendants contend that the evidence they suppressed was immaterial because it was inadmissible, OB-97-98, which again contradicts the Complaint, but also misstates the law. Evidence need not be substantively admissible to be material under *Brady*, there merely must be a reasonable probability that its suppression had an adverse effect, *U.S. v. Bagley*, 473 U.S. 667, 683 (1985), which is why impeachment evidence must be disclosed, *Giglio v. U.S.*, 405 U.S. 150, 153-54 (1972). Defendants are wrong, too, when they say a piece of impeachment

evidence was immaterial because it "would not have resulted in Long's acquittal," OB-99, which is an overstatement of the materiality standard that applies.

Defendants also contradict the Complaint and misstate the law in their argument that the evidence suppressed would have been cumulative. OB-99. Whether evidence is material is fact intensive analysis, *Mellen*, 900 F.3d at 1101, police cannot satisfy their "*Brady* obligation to disclose exculpatory evidence by making some evidence available and claiming the rest would be cumulative," *id.* at 1097-98, and the Court at this stage certainly cannot make that determination as a matter of law, *cf. Gantt*, 717 F.3d at 709. Even at later stages of a case, this Court rejects attempts to downplay the importance of suppressed evidence. *Tennison*, 570 F.3d at 1094. Suppressed evidence is considered collectively, *Wearry*, 577 U.S. at 394, and this Court cannot decide now that it was all cumulative.

Finally, Defendants assert in a single sentence that Long has not alleged that they acted with deliberate indifferences or reckless disregard for her rights. OB-101. This undeveloped argument is forfeited, *Azar*, 911 F.3d at 573 n.1, and it is contrary to Long's extensive Complaint explaining that Defendants intentionally suppressed evidence to frame her, *Gantt*, 717 F.3d at 708 (holding that the standard is "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result").

**3. Destruction of Evidence Is Plausibly Alleged and Clearly Established**.

Long also plausibly pleads that Anderson, Newman, and Verdugo violated her clearly established rights when they destroyed physical evidence. Before 2003, the Supreme Court and this Court held that the bad-faith destruction of or failure to preserve evidence that is potentially exculpatory violates due process. *Arizona v. Youngblood*, 488 U.S. 51, 58, 55 (1988); *Miller v. Vasquez*, 868 F.2d 1116, 1120 (9th Cir. 1989).

To state such a claim, it is sufficient to allege a "[f]ailure to collect potentially exculpatory evidence, coupled with a potentially prejudicially motivated arrest." *Karunyan v. U.S.*, 578 F. App'x 708, 710 (9th Cir. 2014). To qualify as potentially exculpatory, evidence need only be "'material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" *U.S. v. Zaragoza-Moreira*, 780 F.3d 971, 978 (9th Cir. 2015) (quoting *Youngblood*, 488 U.S. at 57).

Taken as true with reasonable inferences in her favor, Long's Complaint states such a due process claim against Anderson, Newman, and Verdugo, who allegedly collected and then intentionally and with malice destroyed a champagne bottle and cup that they found at the scene. Argument V(D) *supra*. Long alleges they knew the exculpatory value of this evidence, and indeed that was the reason that they destroyed it. *Id.* The evidence was potentially useful because it could

51

have been tested and would have exonerated Long by identifying others who were present with Conde at the time of the crime. *Id.* Long further alleges that these Defendants purposefully failed to preserve other forensic evidence that would have revealed the identity of those in the house with Conde at the time of his death, including fingerprint impressions and DNA from the kitchen cabinet which contained a change bowl associated with alternate suspect Bugarski that disappeared in connection with the murder. *Id.* This misconduct prevented Long from being able to prove the presence and identity of others at the scene of the crime with Conde. *Id.* ¶73, 99-100, 103. These Defendants acted intentionally and in bad faith because they could already tie their suspect, Long, to the scene, and they wanted to get rid of evidence that would call into question Long's guilty and implicate others. *Id.*

Defendants do not make a colorable argument that the law governing destruction of evidence claims was not clearly established by 2003. OB-81-83. Instead, they contradict Long's factual allegations, arguing that Anderson, Newman, and Verdugo could not have acted together, OB-76, that the evidence would not have exonerated Long, OB-76-77, that these Defendants did not know that someone other than Long was at the scene, OB-78, and that they did not act in bad faith, OB-78. These factual challenges to Long's plausible allegations do not

entile Defendants to immunity. Instead, they are a reason to dismiss the appeal. Argument I *supra*.

Moreover, Defendants' argument that their conduct in destroying the champagne bottle, cup, and other physical evidence is the equivalent of the officer's failure to take notes discussed in *Cunningham v. Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003), is misplaced. Defendants' destruction of evidence is much more like the destruction of physical evidence that this Court held established bad faith in *Miller*, 868 F.2d at 1121. Long's evidence destruction claim is plausibly pleaded.

**4. Malicious Prosecution Is Plausibly Alleged and Clearly Established**. While Defendants forfeit any argument for qualified immunity on Long's federal malicious prosecution claim, Argument III *supra*, that claim, too, is plausibly pleaded. The allegations already discussed establish that Long alleges that Defendants engaged in misconduct that caused her to be prosecuted without probable cause, and it was clearly established well before Long's ordeal that this type of misconduct stated a claim for malicious prosecution under federal law. *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002).

**5. Conspiracy Is Plausibly Alleged and Clearly Established**. Defendants did not argue below and do not argue here that Long failed to plausibly allege a

conspiracy, OB-59; SER 70-71, forfeiting that argument, *Azar*, 911 F.3d at 573 n.1; *Eberle*, 901 F.2d at 818. Long alleges that each Defendant Officer played a key role in the investigation and joined a small and tightly knit team that in groups and individually committed specific acts of misconduct—fabrication, suppression, and destruction of evidence—in an agreement to frame Long for a crime she had not committed. Statement V *supra*. In addition to the Defendant Officers conspiring with one another, Long alleges that Defendants conspired with private individuals as well, including Bugarski, Lovejoy, and Dills, who committed acts essential to their scheme. *Id.*

It has long been established that conspiracies to violate constitutional rights are unlawful. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970); *Franklin v. Fox*, 312 F.3d 423, 441 (9th. Cir. 2002). But conspiracy is not a separate tort under §1983, it is a means to enlarge the pool of responsible defendants by demonstrating their connection to particular constitutional violations. *Lacey*, 693 F.3d at 935. If the underlying violations are clearly established, such that officers are not immune, then neither are they immune from a §1983 conspiracy claim concerning those violations. *Conner v. Heiman*, 672 F.3d 1126, 1133 (9th Cir. 2012).

Qualified immunity is a doctrine that considers whether state actors were on notice that their *conduct* was unlawful according to established law, not whether prior cases gave notice of a particular civil *remedy*. *Sandoval*, 985 F.3d at 674

("The focus is on the standards governing the defendant's conduct, not legal arcana."); *Armstrong v. Daily*, 786 F.3d 529, 556 (7th Cir. 2015) ("The issue is not whether issues concerning the availability of a *remedy* are settled. The qualified immunity defense focuses instead on whether the official defendant's *conduct* violated a clearly established constitutional right."). As explained, Defendants' misconduct of suppressing, fabricating, and destroying evidence was clearly established as unlawful, and so Defendants are not entitled to immunity from Long's §1983 conspiracy claim concerning the same conduct.

This Court should reject Defendants' argument that the intra-corporate conspiracy doctrine changes the immunity analysis, OB-59-71, for at least five reasons: (1) as discussed, the relevant immunity question is whether officers had notice that their *conduct* was unlawful, and not whether a legal principle like the intra-corporate conspiracy doctrine affected their civil liability; (2) the intra-corporate conspiracy doctrine applies to conspiracies wholly among members of a single entity, and here Long alleges a conspiracy in part between Defendants and private individuals, including Bugarski, Lovejoy, and Dills, and so the intra-corporate conspiracy doctrine would not apply in this case; (3) as Defendants acknowledge, OB-60, neither the Supreme Court nor this Court has ever applied the intra-corporate conspiracy doctrine to §1983 claims, and cases applying that doctrine in other contexts but *not* to §1983 claims does not *unsettle* established

law; (4) that the intra-corporate conspiracy doctrine does not apply to §1983 claims is established by this Court's repeated decisions holding that officers from a single agency can conspire to violate constitutional rights, *Cameron v. Craig*, 713 F.3d 1012, 1013 (9th Cir. 2013) (reversing summary judgment in single-agency conspiracy); *Baldwin v. Placer County*, 418 F.3d 966, 970-71 (9th Cir. 2005) (same, but affirming denial of summary judgment); *Gilbrook v. Westminster*, 177 F.3d 839, 857 (9th Cir. 1999) (affirming jury verdict finding conspiracy to violate constitutional rights against employees of a municipality);[9] and (5) applying the intra-corporate conspiracy doctrine to §1983 claims is legally untenable.[10]

---

[9] Defendants spend more than four pages of their brief parroting the out-of-circuit decision in *Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019), without addressing any of this Court's cases permitting §1983 conspiracies to proceed. OB-62-69. These cases put Defendants on notice that their conduct—fabricating, suppressing, and destroying evidence as part of an agreement to frame an innocence person—was unlawful.

[10] The doctrine provides that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). It arose because the presumption for a conspiracy among agents of a single corporate entity is that the actions of employees are attributed to the corporate principal. But for §1983 claims that presumption cannot apply because *Monell* holds that actions of municipal employees can never be imputed to their municipal employer. So applying the to §1983 claims does not make sense.

Defendants discuss at length the application of the intra-corporate conspiracy doctrine to claims under 42 U.S.C. §1985, including this Court's decision in *Fazaga v. F.B.I.*, 965 F.3d 1015, 1059 (9th Cir. 2020), which was later vacated by *F.B.I. v. Fazaga*, 142 S. Ct. 1051 (2022), and decisions on §1985 from other circuits. OB-61-62. Section 1985 targets private conspiracies, which is why the intra-corporate conspiracy doctrine might apply, but the same logic does not extend to §1983 conspiracies.

**6. Failure to Intervene Is Plausibly Alleged and Clearly Established**.

Long alleges that each of the Defendant Officers worked closely together on the Conde investigation and conspired to frame Long. Statement V *supra*. She alleges that each Defendant had a realistic opportunity to intervene and prevent the violation of Long's constitutional rights, by revealing the misconduct of other officers during the prolonged investigation, prosecution, and subsequent criminal trials, and yet chose to go along with the frame-up. *Id.* These facts justify an inference that each Defendant Officer could have disclosed reports and other evidence that was suppressed, blown the whistle on the fabrication of evidence, and ensured physical evidence was collected and tested. Long plausibly alleges that Defendants each had a realistic opportunity—indeed, a long time—to intercede but did not.

This Court has held for decades that "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen," and they can be held liable "if they had an opportunity to intercede." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *U.S. v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir.1994) (holding in 1996 that this proposition was established by "a long line of civil cases"). Contrary to Defendants' suggestion that this duty is limited to excessive force cases, OB-52-53, this Court has found the duty clearly established in cases concerning different types of constitutional

violations, including in wrongful conviction cases. *Tobias v. Artega*, 996 F.3d 571, 583-84 (9th Cir. 2021) (duty to intercede to prevent a coercive interrogation); *Denby v. Engstrom*, No. 20-16319, 2021 WL 2885846, at *3 (9th Cir. July 9, 2021) (destruction of the plaintiff's property); *Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1029 (9th Cir. 2002) (unlawful search); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (violation of a prisoner's rights).

Defendants devote three sentences to *Tobias*, this Court's most recent binding authority on this issue, asserting that it concerned 2013 conduct and therefore did not provide notice. OB-56. But *Tobias* cited cases from 1994, 1995, 1996, and 2000 to hold that police officers were fairly on notice that police must intervene to stop investigative misconduct in a wrongful conviction case that violates an individual's constitutional rights. The Defendant Officers' duty to intervene was clearly established by 2003.[11]

## C. Defendants' Argument Critiquing the District Court Lacks Merit

The discussion above establishes that Long plausibly pleaded deeply established constitutional claims against each of the Defendant Officers, many of

---

[11] To make their argument that this duty was not established, Defendants emphasize an unpublished decision that they never mentioned in the district court, compare OB-51 (citing *Penaloza v. City of Rialto*, 836 F. App'x 547, 549 (9th Cir. 2020), with SER-73-74 (not mentioning it), forfeiting the argument, *Azar*, 911 F.3d at 573 n.1. Regardless, *Penaloza* is not precedential, and it was decided before the published decision *Tobias*, which found the duty to intercede clearly established.

which they do not address. Curiously, the Defendants Officers' brief begins with an argument that the district court did not give individualized consideration to each Defendant's claim of qualified immunity. OB-36-46. Their argument critiques the district court's analysis, identifying findings that Defendants contend that the district court did not make. *E.g.*, OB-38, OB-41-42, OB-44-45.

But Defendants nowhere in this section argue that Long's allegations against any particular Defendant on any particular claim are insufficient. Instead, they conclude the argument by saying that the district court's analysis was not specific enough, OB-40, and that the court did not point to established law, OB-46. While Long disagrees with Defendants' characterization of the district court's analysis, this Court's review is *de novo*, *Elder v. Holloway*, 510 U.S. 510, 516 (1994), and so it is somewhat beside the point that the district court engaged in a level of analysis that the Defendants found unsatisfactory. What matters here is whether Long has plausibly pleaded clearly established constitutional violations against each of the Officer Defendants, and the discussion above establishes that she has.

## CONCLUSION

This Court should dismiss for lack of jurisdiction. In the alternative, it should affirm.

RESPECTFULLY SUBMITTED,

 /s/ Steve Art_____
*Counsel for Kimberly Long*

Jon Loevy
Steve Art*
Lauren Carbajal
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
steve@loevy.com

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway St.
Boulder, CO 80302
(312) 243-5900
elizabethw@loevy.com

Jan Stiglitz
LAW OFFICE OF
JAN STIGLITZ
14462 Garden Tr.
San Diego, CA 92127
(619) 807-5890

*Counsel of Record*

**August 28, 2023**

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULE OF APPELLATE PROCEDURE 32(a)(7)(B)(i)

I, Steven Art, hereby certify, pursuant to Federal Rule of Appellate Procedure 32(g)(1), that the foregoing Brief of Plaintiff-Appellee Kimberly Long complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and Ninth Circuit Rule 32-1(a) because it contains 13,944 words, excluding those portions of the brief listed in Federal Rule of Appellate Procedure 32(f) that do not count toward the word limitation. I relied on the word-count feature in Office 365.

/s/ Steve Art_____
*Counsel for Kimberly Long*

Jon Loevy
Steve Art*
Lauren Carbajal
LOEVY & LOEVY
311 N. Aberdeen St.
Chicago, IL 60607
(312) 243-5900
steve@loevy.com

Elizabeth Wang
LOEVY & LOEVY
2060 Broadway St.
Boulder, CO 80302
(312) 243-5900
elizabethw@loevy.com

Jan Stiglitz
LAW OFFICE OF
JAN STIGLITZ
14462 Garden Tr.
San Diego, CA 92127
(619) 807-5890

*Counsel of Record*

# CERTIFICATE OF SERVICE

I, Steven Art, hereby certify that I served the Answering Brief and

Supplemental Excerpts of the Record of Plaintiff-Appellee Kimberly Long on

August 28, 2023, using the CM/ECF system, which effected service on all counsel

of record for the Defendants-Appellants.


                                        /s/ Steve Art
                                        *Counsel for Kimberly Long*

Jon Loevy                Elizabeth Wang           Jan Stiglitz
Steve Art*               LOEVY & LOEVY            LAW OFFICE OF
Lauren Carbajal          2060 Broadway St.        JAN STIGLITZ
LOEVY & LOEVY            Boulder, CO 80302         14462 Garden Tr.
311 N. Aberdeen St.      (312) 243-5900           San Diego, CA 92127
Chicago, IL 60607        elizabethw@loevy.com     (619) 807-5890
(312) 243-5900
steve@loevy.com

*Counsel of Record